CHARLES FINKELMEIER et al., Executors, etc., Respondents, v. HESTER BATES et al., Appellants.

By a lease for a term of twenty-one years the lessee covenanted to pay an annual rental, and all taxes and assessment, also to build a " first-class commercial building," of a size and material specified, to cost not less than $30,000. A right of re-entry in case of non-payment of the rent was reserved, and it was covenanted that " at the expiration of the aforesaid term" the value of the building should be appraised, and upon payment of one-half of the appraised value the building should belong to the lessor, and " on the last day of said term or other sooner determination of the estate" granted, the lessee would peaceably surrender possession. The lessor was given the option of giving a renewal lease for a further term of twenty-one years instead of paying half the value of the building, and at the expiration of that term it was declared that the building should belong to him. The lessee erected the building, and at the expiration of about five years his assignees were dispossessed for non-payment of rent. In an action to recover the rent due defendants set up as a counterclaim the half value of the building, claiming that the words " expiration of the term" when the lessor was to pay the half value in case he determined not to re-lease related not to time, but to the estate of the lessee, and that upon termination of the estate the liability of the lessor arose. *Held* untenable ; that assuming the covenant to pay such half value to be an independent one, not conditioned upon the prior payment of rent, the word " term " was used in the sense of time, and such liability did not arise until the end of the twenty-one years.

The lessor, as part of the original construction, put into the building an elevator, an engine to run the same; a boiler was also placed in a vault under the sidewalk to furnish steam for the engine, and for heating the building. The boiler was set in brick work, and could only be removed by taking up the sidewalk. Defendants sought to counter-claim the value of the elevator and boiler ; *held* untenable ; that in the absence of evidence to the contrary, it was to be assumed the price of these articles went to make up the stipulated expenditure of $30,000, and under the lease, as between the parties, they were to be considered as part of the building.

(Argued March 30, 1883 ; decided April 17, 1883.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 4, 1882, which modified, and affirmed as modified, a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury.

This action was originally brought by Selena H. Jewell, the devisee of the lessor, to recover rent alleged to be due from defendants, as assignees of the lessee under a lease of certain lots in the city of New York, executed in 1866 by Charles J. Jewell to David C. Sturges ; said devisee having died during the pendency of the action, her executors, the present plaintiffs, were substituted.

The lease was for a term of twenty-one years from May 1, 1867 ; the lessee covenanted to pay an annual rent of $3,000, and to pay all taxes and assessments upon the lots during the term. A right of re-entry by the lessor was reserved in case of non-payment of rent for ten days after any payment became due. The lease contained these clauses :

"And the said party of the second part further covenants and agrees to erect and build upon said premises a first-class commercial building to cover the entire premises, except such part thereof as it is usual to reserve for light and air in the rear. Said building shall not be less than five stories in height and with a front of white marble, yellow stone or of iron, and to cost not less than thirty thousand dollars ($30,000); said building shall be completed on or before the 1st day of May, 1868, unless the same shall be injured or destroyed by fire, without

the fault or negligence of the party of the second part while in process of erection and completion, in which event a reasonable time hereinafter shall be allowed him to re-erect or repair the same."

"The said party of the second part further covenants and agrees to keep the building so to be erected at all times fully insured in the joint names of the parties hereto in as large an amount as any first-class insurance company in the city of New York will accept; and in the event of neglect so to do, the party of the first part shall be at liberty to insure the same, the said party of the second part agreeing to refund and pay the amount of premium therefor; any and all moneys received from such insurance for loss or damages shall be payable to the party of the second part upon his giving satisfactory security to the party of the first part that the whole of the money so received shall be expended in restoring the building to the like condition in which it was before such loss or damage."

"It is mutually covenanted and agreed by the parties hereto that at the expiration of the aforesaid term the building upon said premises shall be appraised by appraisers to be chosen one by each party hereto, and in case of their disagreement those two shall choose a third, and the decision of said three appraisers, or a majority of them, shall be final and conclusive upon both parties hereto, and upon payment of one-half of such appraised value of said building to the party of the second part, by the party of the first part, the same building shall belong wholly to said party of the first part hereto. And that on the last day of the said term or other sooner determination of the estate hereby granted, the said party of the second part, his executors, administrators or assigns, shall and will peaceably and quietly leave, surrender and yield up unto the said party of the first part, his heirs or assigns, all and singular the said demised premises in good order and condition. It is, however, expressly stipulated and agreed between the parties hereto that the party of the first part, upon giving notice of at least three months to the party of the second part of his election so to do, in lieu of paying one-half of the aforesaid appraised value, may exe-

cute and deliver to the party of the second part, who shall accept the same, a lease for the further term of twenty-one years of the premises aforesaid, at a rent to be fixed by appraisers to be appointed as aforesaid, in case the parties hereto cannot agree, such lease to contain similar covenants and stipulations other than as to the amount of rent, erection of building and renewal as are herein contained, and at the expiration of said last term mentioned, or other sooner determination of the estate thereby granted, the said building shall belong wholly to the party hereto of the first part, and to be surrendered to him in like good order and condition."

The building was erected by the lessee in pursuance of the contract in December, 1879; plaintiffs' testator took possession by virtue of a warrant in summary proceedings, because of default in payment of rent. Defendants set up as a counter-claim, half the value of the building, and as a separate counter-claim, the value of an elevator, engine and boiler put into the building by the lessee. The material facts in reference thereto are stated in the opinion.

*Edward Van Ness* for appellants. The performance of the covenant upon the part of the lessor to pay one-half of the value of the building at the expiration of the term is charged upon his grantee by the statute. (1 R. S. 747, § 24; Smith's Lead. Cas. 22 and notes; *Norman* v. *Wells*, 17 Wend. 146; 1 R. S. 748, § 2; Littleton, 111, chap. 10, par. 585, edition by Thornton, p. 505.) The covenant to pay one-half of the value of the building was not collateral in any possible sense. (*Norman* v. *Wells*, 17 Wend. 146; Taylor's L. & T., § 260, 1 and 2 and note; 1 Washb. on Real Prop. [3d ed.] 327 [5a.], 330 [11], and [12]; 2 id. 16, 17; Taylor's L. & T., § 330; *Ganson* v. *Tift*, 71 N. Y., see opinion, p. 53; Littleton's Tenures, chap. 10; Taylor's L. & T., § 439.) The claim that the defendants cannot enforce the covenant to pay one-half of the value of the building at this time, because the words "at the expiration of the aforesaid term" refer only to a termination of the lease by lapse of time, is untenable. (Washb. on Real

Prop. 292; Taylor's L. & T., § 16 ; 2 Blackst. 144 ; *Beach* v. *Nixon*, 9 N. Y. 35 ; McAdam's L. & T. 644 [new ed.] ; *Johnson* v. *Oppenheimer*, 55 N. Y. 293 and 4 ; *Roe* v. *Conway*, 74 id. 201; McAdam's L. & T., p. 660 ; Angell on Limitations, 390.) The claim by plaintiffs that the payment of rent and taxes is a condition precedent to any claim for the value of the building is untenable. (Taylor's L. & T., § 278 ; *Tracy* v. *Albany Ex. Co.*, 7 N. Y. 472.) The plaintiff, as devisee of the reversion in part of the demise, cannot enforce any conditions. The rule is that covenants may be apportioned, but conditions cannot. (Smith's L & T. 292; *Twynain* v. *Pickard*, 2 B. & A. 109.) That a ground of forfeiture exists is of no importance, there must be an actual entry for conditions broken. (*Twynain* v. *Pickard*, 2 B. & A. 109 ; *Beach* v. *Nixon*, 9 N. Y. 35 ; *Tallman* v. *Coffin*, 4 id. 138.) The boiler, engine, hoist-way, etc., were chattels for the temporary convenience of tenants, and as such belong to the lessee and his assigns, and passed to defendants under their mortgage. (*Voorhees* v. *McGinnis*, 48 N. Y. 278 ; Ewell on Fixtures, 275 and note; Taylor's L. & T., §§ 544–545.)

*Richard L. Sweezy* for respondents. The lessees have failed to perform the covenants of the lease by omitting to pay the taxes and ground rent, and they could not demand payment for the building even if the time for payment had arrived. (*People's B'k* v. *Mitchell*, 73 N. Y. 406 ; *Pike* v. *Butler*, 4 id. 360.) When there are mutual agreements and an act by one party is to be in point of time previous to an act by the other, the doing of the first act is a condition precedent to the compelling performance of the second, whether so stated in the contract or not. (*People's B'k* v. *Mitchell*, *supra*, at p. 411; *Grant* v. *Johnson*, 5 N. Y. 247 ; *Paine* v. *Brown*, 37 id. 228.) The covenant concerning the payment for the building is on the part of the parties only and not of their assigns, and is personal only and does not run with the land, and cannot be enforced against the

devisee of the lessor. (1 Washb. on Real Prop. 330, 331; Taylor's Land & Ten. 127, 128, 157; *Coffin* v. *Tallman*, 8 N. Y. 467; *Cole* v. *Hughes*, 54 id. 444.) The counter-claim for the value of the alleged personal property was properly dismissed, it is not a cause of action on contract, but on a tort, and cannot be set up in this action. (Code, § 501; *Peiser* v. *Stearns*, 1 Hilt. 86; *Chambers* v. *Lewis*, 11 Abb. Pr. 212; *Smith* v. *Hall*, 67 N. Y. 48; *Clapp* v. *Wright*, 21 Hun, 240; *Jones* v. *Hoare*, 5 Pick. 285; *Willett* v. *Willett*, 3 Watts, 277; *Coit* v. *Stewart*, 12 Abb. Pr. [N. S.] 216.) The elevator, boiler and heating apparatus are part of the realty, and could not be removed by defendants. (*McRae* v. *Central B'k*, 66 N. Y. 489.) A defendant cannot counter-claim a joint cause of action against the plaintiff and other persons not parties to the action. (Code, § 501.)

FINCH, J. Assuming the position of the appellants, that the covenant of the lessor to pay the value of one-half of the building erected on the leased premises is an independent covenant, and not conditioned upon the prior payment of rent and taxes during the twenty-one years, there yet remain difficulties which bar a recovery. The payment for the building by the lessor was to be made at the " expiration of the term." The meaning of that phrase as used in the contract involves a construction of the agreement to be gathered from its several provisions. The lease, as printed for our use, is divided into separate and numbered paragraphs. That was done for convenience merely, the original instrument having no such subdivisions. By its terms the premises were granted to the lessee for a period of twenty-one years at an agreed rent of $3,000, which the lessee covenanted to pay quarterly in each year, together with the taxes, and if the rent should remain in arrears for ten days, or default be made in any of the lessee's covenants, a right of re-entry was reserved to the lessor. It was further provided that within two years a building should be erected upon the premises by the lessee. Its general purpose and character was described. It was to be a first-class

commercial building, not less than five stories in height, with a front of white marble, yellow stone or iron, and to cost not less than $30,000. It was to be kept insured in the joint names of the parties, and in case of fire was to be restored or repaired out of the insurance money received. At the "expiration of the term" the building was to be valued by chosen appraisers, and the lessor was to pay to the lessee one-half of that appraised value, and upon such payment the building "should belong wholly" to the lessor, provided, however, that the latter, at his option, instead of the payment in cash, might make it by giving a new lease for twenty-one years more, at a rental to be agreed upon, or, in case of disagreement, to be fixed by selected appraisers. It is thus apparent in the contract of the parties that the construction of this building was intended to be practically a payment of rent in advance. The rents to be paid quarterly in cash were fixed at such a sum as, with one-half the value of the building at the close of the term, would amount to an adequate rent for the whole term; and the same process repeated during a renewal of the lease for another twenty-one years was to exhaust in the same way the remaining half of the building. It is also apparent that the lessor was never bound absolutely to pay for one-half of the value of the building in cash. He could do so if he pleased, but was not bound to do so. He was at liberty in lieu thereof to give a new lease for a further term at a rent agreed upon or appraised. This payment was to be made, or the new lease given at "the expiration of the term." The appellants construe the word "term" as relating not to time, but to the estate of the lessee. It is capable of use in both senses. (1 Washburn on Real Prop. 385, *292.) And whether the one sense or the other is to be attached to the form of expression depends upon the construction of the instrument containing it. Here the estate of the lessee had been terminated by his failure to pay rent and taxes, and his dispossession by the landlord under appropriate legal proceedings. The appellants insist that upon such termination of the estate the liability of the lessor arose, and the respondents that it did not come into ex-

istence until the end of the twenty-one years. We think the latter is the true construction. The seventh subdivision of the lease, after providing " that at the expiration of the aforesaid term " the building should be appraised, further undertakes to stipulate for the ultimate surrender of the premises by the lessee in good order and condition, and in fixing the date of such surrender uses the expression, " on the last *day* of the said *term*, or other sooner determination of the *estate* hereby granted." The phraseology indicates that the word " term " was used in the sense of time as distinguished from the estate granted. The character of the agreement tends to the same result. The lease provided, at the option of the lessor, for paying the value of the building by the tenant's occupation at a reduced or graded rent for forty-two years; and the lessor reserved a choice at the end of the first twenty-one to pay one-half of the then value of the building. That value at the end of twenty-one years might be very different from the value at the end of five ; and the lessor, after twenty-one years receipt of rents, might easily have saved and accumulated from them the means with which to pay, when at the end of five years such payment might be impossible. The contention of the appellants, if sustained, would enable a lessee to change materially, and to the injury of the lessor, the stipulations of a lease by the mere process of repudiating its conditions. He makes default in the payment of rent and taxes, and so obliges the landlord to remove him, and rests upon that fact as the ground for depriving the lessor of a credit or delay of nearly twenty years, and matures the debt by means of his own wrong. We think the counter-claim was properly rejected for that reason. The demand was not due, and the lessor's option not destroyed. Whether any, and, if so, what right may remain to the lessee in the future, we need not now determine.

But another form of the difficulty growing out of the dispossession of those claiming under the lessee remains to be considered. A separate and distinct counter-claim for the value of the elevator, engine and boiler was asserted and also rejected. The engine was supplied to run the elevator, and

the boiler was needed to furnish steam for the engine, and for the heating of the building. The boiler was placed in a vault under the sidewalk, upon a brick foundation prepared for the purpose, and protected on each side by a substantial brick wall. It could only be removed by taking up the sidewalk. The engine was bolted to a bed-plate which rested upon a stone foundation built to receive it. The elevator extended to the top of the building, running upon guide-posts attached to the frame. The elevator and steam-heating apparatus are the common conveniences of a first-class commercial building. They were introduced as part of the original construction under the lessee's contract, and we must assume, in the absence of evidence to the contrary, went to make up the expenditure of $30,000, which the lessee was bound to incur. There is no evidence and no finding that their cost was in excess of the $30,000. On this state of facts, we think that as between lessor and lessee, under the peculiar contract to which they were parties, the elevator, engine and boiler were a part of the building and of the real estate. They were supplied for its use; were fairly included in the description of a first-class commercial building; could not be removed without substantial injury to the structure; were within the reasonable contemplation of the contract; and were a part of the very expenditure which the lessee was bound to make, and the lessor was entitled to receive. If there be doubt whether as between vendor and vendee of a first-class commercial building an elevator and the machinery necessary to operate it are to be treated as part of the realty, it is dissipated in the present case by the peculiar character of the contract, and the nature of its conditions. If the proof had shown that these appurtenances had been supplied by the tenant in excess of the $30,000 he was bound to expend, and so for his own convenience, and not in part performance of his contract obligation, the question would have been purely one of fixtures. Upon the evidence as it stands, we do not doubt that the articles in question must be deemed a part and parcel of the building, and so cannot serve as the basis of a separate counter-claim.

These views of the case render unnecessary any considera-tion of the assignments and transfers of title on both sides. The defendants claiming under and through the original lessee can have no other or greater rights than his.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.