J. A. MORRISON, Appellee, v. THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Appellant.

Killing Cattle:    EVIDENCE:    *Height of right-of-way fence.* In an action against a railroad for the killing of cattle, evidence as to the height of the right of way fence between the time of the killing and a subsequent date was proper; it appearing that there had been no change in the height.

INSTRUCTION CONSTRUED:    *Duty to fence and damages.* In an action against a railroad for the killing of a horse, the court charged as to what constituted a proper right of way fence under the statute, and, in stating the issues, mentioned the allegation of a failure to maintain a legal fence, and the claim that the horse was killed "while running at large by reason of the want of such fence." The evidence as to the condition of the fence, and whether there was an open gate, was in conflict. *Held,* that a contention that the ·jury might have believed defendant liable for mere failure to maintain a 'fence was without merit, as, in view of the evidence and statements of the court, they must have known recovery depended upon the horse having reached the track because of failure to fence as required.

Right to Way:    RECOGNITION.    The acceptance of a deed which in terms reserves to the grantor a· private way is a recognition of the way.

TENANT HAS RIGHT TO WAY: *Damages for obstruction.* The owner of a tract of land conveyed a portion thereof, reserving a private way for cattle. Subsequently the grantee obstructed the

way, and, in an action by the lessee of the balance of the tract for damages from the obstruction, defendant contended that, as the lessee was only a tenant for years he could not avail himself of the reservation. *Held*, that the tenancy gave the lessee a right to the way, and the covenant in the deed as to the reservation did not affect the case.

*Statute remedy for obstruction is available to him.* Under Code, sections 5078, 5081, imposing a penalty for the obstruction of a way, a lessee of land may proceed under the statute for an obstruction of a way appurtenant to the land, though the obstruction was placed there before his term commenced.

*Appeal from Marshall District Court.*—Hon. O. Caswell, Judge.

Thursday, October 16, 1902.

There was a judgment for damages from which the defendant appeals.—*Affirmed.*

*Hubbard, Dawley & Wheeler* and *A. H. Sargent* for appellant.

*J. L. Carney* for appellee.

Ladd, C. J.—Linn creek runs through Halbert's farm, of 235 acres, as does also defendant's line of railway. Where these intersect there is a bridge, and under it a passageway, with hard bottom, about eight feet wide and six feet high, on the east bank of the creek. But 40 acres, on which the buildings stand, lie south of the track. Immediately north of it is a pasture, to which the cattle pass by the way under the bridge to and from the barnyard. To enable defendant to construct a second track, Halbert conveyed an additional right of way immediately north of that already occupied, but inserted in the deed the following grant and reservation: "Also the right to straighten the channel of the stream on the north side of the bridge on said south west quarter (S. W. ¼) of north-west quarter (N. W. ¼), but reserving the rights as now

enjoyed for passage of stock under the bridge." In February, 1900, the defendant constructed a second bridge across the creek, with an iron girder extending from the east bank about 60 feet, and within 2 or 3 feet from the ground. This practically so obstructed the passageway under the bridge as to nece sitate the use of a grade crossing in taking cattle to and from the pasture. The plaintiff leased the farm from Halbert, November 20, 1899, but did not take possession until March 1st following. Thereafter, on March 10, 1900, he lost a valuable bull by drowning because of the obstruction. Later a horse was killed on the track. For the value of these, and also to recover damages occasioned by being compelled to drive his cattle over the grade crossing to pasture, this action was brought.

I. As enjoyed when the deed was executed, the passage under the bridge on the bank of the creek was merely a private way along which cattle passed from the barnyard to the pasture, denominated in the books a "driftway." It had certainly been so used four years, and how much longer does not appear. Nor does the record show whether established under the statute giving the landowner an adequate means of crossing. It certainly served this purpose, however, in affording a passageway for the cattle. The right thereto was expressly recognized and admitted by accepting the deed. It does not purport to create the right, but to reserve and continue the enjoyment of one already existing. That the reservation amounts to a covenant running with the land is conceded, and appellant argues that, as plaintiff is but a tenant for a term of years, he cannot avail himself of its breach, and especially so for the reason he was not in possession when this occurred. See 8 Am. & Eng. Enc. Law (2d Ed.) 144 et seq. It is apparent that the lessee had no cause of action for anything done prior to taking possession, March 1, 1900. Until then his interest was what is known as an "interesse termini,"—a right to

the possession of a term in the future. The lease conferred the right to enter; nothing more. Before going into possession, he could not maintain trespass for the tortious invasion of the property, nor by such invasion could his rights be in any wise affected. *Brickhead v. Cummins*, 33 N. J. Law, 55; *Wood v. Hubbell*, 10 N. Y. 479; 18 Am. & Eng. Enc. Law (2d Ed.) 553. He is not asking damages to the land itself. Any injury to the reversion necessarily belongs to the owner. The injury of which plaintiff complains is solely to the enjoyment of the use and possession. The right to the use of the entire premises, including the way, passed to him under the lease. Protecting it by this covenant did not change its character. Obstructing it is expressly prohibited by statute. Section 5078 of the Code reads, in part: "The obstructing or incumbering by fences, buildings or otherwise, the public roads, private ways, streets, alleys, commons, landing places or burying grounds are nuisances" Penalty is provided for in section 5081. Such a nuisance is a continuing one, and the maintenance of an obstructon in a private way is quite as inimical to the law as is its original construction. Though the owner only may have had right to sue prior to March 1, 1900, the continuance of the nuisance thereafter furnished the plaintiff, then in possession, with a fresh cause of action. That the lessee may maintain a suit for the injury to the use of the leasehold occasioned by the continuance of a previously existing nuisance appears to be well established. *Sherman v. Iron Works Co.*, 2 Allen, 524 (79 Am. Dec. 799); *Garland v. Aurin*, 103 Tenn. 555 (53 S. W. Rep. 940, 48 L. R. A. 862, 76 Am. St. Rep. 699); *Lockett v. Railway Co.*, 78 Tex. 211 (14 S. W. Rep. 564). While the theory of the court in its instructions differed somewhat from that stated, the existence of the obstruction was beyond dispute, and recovery limite to damages proximately flowing therefrom.

II. The horse was killed on the track October 1, 1900, and evidence of the height of the right of way fence at

different times up to November 10, 1900, was received. As it appeared from the testimony of two witnesses that no change in the height had been made during the 4 interval, the ruling was correct. All contained in instructions 13 and 14 is a statement of what constitutes a fence, under the statute. There is no intimation that a failure to maintain such a fence would render the defendant liable. In stating the issues the court mentioned the allegation of a failure to maintain a legal fence, and the claim that the horse was killed "while running at large by reason of the want of such fence." In the eleventh paragraph of the charge the court said a railroad company, where the right to fence exists, "shall be liable to the owner of any stock killed or injured by the want of such fence" The evidence as to the condition of such fence, and whether there was an open gate, was in conflict. In view of this, and the statements of the court mentioned, the jury could scarcely have failed to appreciate that recovery depended on the horse having reached the highway because of a failure to fence as required by statute. *Norman v. Railway Co.*, 110 Iowa, 283.—AFFIRMED.