[Civ. No. 2901. First Appellate District, Division One.—December 5, 1919.]

LEONHARD LANG et al., Appellants, v. PACIFIC BREW-
ING AND MALTING COMPANY (a Corporation),
Respondent.

[1] LEASES—SCOPE, PURPOSE, AND EFFECT—INSTRUMENT TO BE CON-
STRUED AS A WHOLE.—The scope, purpose, and effect of a lease
must be determined from a consideration of it as a whole, rather
than by a resort to any individual clause thereof, and such con-
struction must be placed upon it as will render all its clauses
harmonious and consistent.

[2] ID.—CONFORMITY TO INTENTIONS OF PARTIES—REFERENCE TO PRE-
VIOUS AGREEMENTS.—A lease must be given such an interpretation
as will make it effective in conformity with the intention of the
parties; and if its terms are in any way ambiguous or uncertain,
it must be interpreted in the sense in which the lessee believed at
the time of making it that the lessor understood it. If necessary
for a full understanding of its terms, it should be read in the
light of the previous agreement out of which it arose, in order,
if practicable, to give effect to the actual understanding and
agreement of the parties.

[3] ID.—CONSTRUCTION TO MAKE SENSE.—Words and sentences in a
lease should be construed to make sense and reason.

[4] ID.—PAROL EVIDENCE ADMISSIBLE.—Parol evidence is admissible
for the purpose of enabling the court to ascertain whether or not
the principles of law embodied in the sections of the Civil Code
relating to the construction and interpretation of contracts are
pertinent and applicable to the facts of any particular case.

[5] ID.—ACTION FOR DAMAGES FOR BREACH—TERM CONTEMPLATED—
—EVIDENCE.—In this action for damages for breach of a lease
under which the lessors agreed to erect a building and let it to
the lessee for the term of ten years, commencing on a given date,
and which provided further that in the event of the inability of·
the lessors' to deliver possession at the time agreed, they should

not be liable for any damage thereby, and the lessee would not be liable for rent until possession could be delivered, but that "the terms of the lease shall be correspondingly extended," the evidence as to the conversations had during the negotiations prior to the signing of the lease, but after it had been prepared, showed that the parties had in mind an arrangement by which the term of the lessee's occupation of the premises should cover a period of ten years from and after the date on which it entered into possession.

[6] ID.—EXECUTION BY CORPORATION—RATIFICATION OF ACTS OF AGENT. Where the officers of a corporation execute a lease negotiated by one acting as its agent, and in whose hands it left the entire matter, and thereafter it enters into possession of the leased premises and retains the benefits of the lease, it cannot thereafter urge that it is only bound by the provisions of the lease to the extent that such agent possessed authority to contract in its behalf. By claiming the right to enjoy the fruits of the lease, with full knowledge of its terms, made and assented to by such agent, it ratified the lease and assumed its burdens.

[7] ID.—MEANING OF WORD "TERM."—While the word "term," in instruments affecting real property, may relate to the estate of the lessee, it also refers to the time during which the estate may be enjoyed; and whether the one sense or the other is to be attached to the form of expression depends upon the construction of the instrument containing it.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John T. Nourse, Judge. Reversed.

The facts are stated in the opinion of the court.

F. J. Castelhun for Appellants.

Harding & Monroe for Respondent.

WASTE, P. J.—Appellants brought this action to reform a lease of real property and for damages for its alleged breach. Defendant had judgment and plaintiffs appeal.

In 1907, the Tacoma Bottling Company, of which George Alpers was president, was dealing with the defendant, and buying its product. Being desirous of a wider outlet for his company's goods, Alpers negotiated with plaintiffs for a lease of the property in question, in behalf of one of his customers, Faktor. He represented to the defendant, in sub-

stance, that the lease could be obtained if the defendant would guarantee its performance, to which defendant agreed. When the document was prepared, however, it was executed by defendant, not as guarantor, but as lessee.

Under the terms of the lease the appellants agreed to erect the building and let it to respondent "for the term of ten (10) years, commencing on the first day of August, one thousand nine hundred and seven." A further clause in the lease reads as follows:

"And said party of the second part agrees that in the event of the inability of the parties of the first part to deliver possession of said demised premises at the time herein agreed, then neither the parties of the first part, nor Wolf and Hollman, their agents, shall be liable for any damage thereby, nor shall this lease be void or voidable, but in this event, the party of the second part, shall not be liable for rent until such time as the said parties of the first part can deliver possession, and the terms of the lease shall be correspondingly extended."

The building was not completed until in January, when respondent went into possession, paying no rent until the first of February, 1908. It continued to occupy, and use, the premises until August 1, 1917, when it surrendered possession, claiming that the lease terminated on that date. Appellant refused to accept this view, contending that the term of the lease actually began when the building was completed and ready for occupancy, and did not expire until ten years from, and after, that time, which would be February 1, 1918. They demanded of plaintiff the payment of the rent, and endeavored to secure a tenant for the premises for the remainder of the alleged term, but, not being able to find one, brought this action, specifying the amount of rent for the six months in dispute, as damages. Claims for the cost of some repairs, and for an attorney's fee, were included in the action. They sought reformation of the lease, as will hereafter appear. The lower court denied reformation, found against the plaintiff on the allegations of the amended complaint, and gave judgment for the defendant. Insufficiency of the evidence to support the findings, errors in law in sustaining objections to questions as to what was said by the parties regarding the terms of the lease, before it was executed, and that the judgment is

against law, are the points relied on by appellants in seeking a reversal of the judgment.

The solution of the question, thus presented, is to be found in the consideration to be given to the clause in the lease already quoted, and in the interpretation placed on the concluding phrase, "and the terms of the lease shall be correspondingly extended."

[1] The scope, purpose, and effect of the lease must be determined from a consideration of it as a whole, rather than by a resort to any individual clause thereof. (Civ. Code, sec. 1641.) Such construction should be placed upon it as will render all its clauses harmonious and consistent. (Jones on Landlord and Tenant, sec. 67.) [2] So construed, the lease must be given such an interpretation as will make it effective in conformity with the intention of the parties (Civ. Code, sec. 1643); and if its terms are in any way ambiguous or uncertain, it must be interpreted in the sense in which the lessee believed at the time of making it that the lessor understood it. (Civ. Code, sec. 1649.) If necessary, for a full understanding of its terms, it should be read in the light of the previous agreement out of which it arose, in order, if practicable, to give effect to the actual understanding and agreement of the parties. (*Reading Iron Works—Sweatman's Appeal,* 150 Pa. St. 369, [24 Atl. 617].) [3] Words and sentences should be construed to make sense and reason. (*Norris* v. *Showerman,* 2 Doug. (Mich.) 16; Civ. Code, sec. 1644.) [4] The sections of the code, which we have quoted, relating to the construction and interpretation of contracts, contemplate the introduction of parol evidence. For it is only upon the introduction of such evidence that it can be ascertained whether or not the principles of law embodied in those sections are pertinent and applicable to the facts of any particular case. (*Lassing* v. *James,* 107 Cal. 348, 356, [40 Pac. 534].)

[5] Appellants allege that, by the mistake of the typist who prepared the document, the word "terms" appearing in the clause was inserted instead of the word "term," and that by the mutual mistake of all the parties the error was not discovered until after the commencement of this action. In proof of the allegation, and as tending to support the claim that the term of the lease did not begin until the completion and occupancy of the building, plaintiffs, Leonhard Lang

and Otto Lang, testified that during the negotiations, immediately prior to the actual signing of the lease, but after it had been prepared, "it was said" by them and Alpers, the president of the Tacoma Brewing Company, "that the lease should run fully for ten years . . . from the time the building was completed." There was no showing to the contrary. Viewed, therefore, in the light of the fact that the word "term," when applied to a lease, means "that period which is granted for the lessee, or tenant, to occupy, and have possession of, the premises" (*Taylor* v. *Terry*, 71 Cal. 46, 48, [11 Pac. 813, 814]), we are of the opinion that there was evidence, before the lower court, tending to show that the parties did have in mind an arrangement by which the term of defendant's occupation of the premises should cover a period of ten years from and after the date on which it entered into possession. It is but logical, therefore, to conclude that the clause in the lease under consideration was drawn with that end in view.

[6] The respondent attempts to escape the effect of this evidence by contending that Alpers was not the agent of, and in no way represented, the defendant in the matter. According to the testimony of the secretary and treasurer of respondent, and one of its officers executing the lease, the matter was "put up to" it to guarantee the lease, to which it agreed. It left the entire matter in the hands of Alpers. It received at his hands the completed document which it executed. While it may not have had knowledge of all the acts of Alpers, in connection with the negotiations for, and the preparation of, the lease, it had full knowledge of the provisions of the document, including the clause in question, before it was signed by its officers. Its secretary and treasurer so testified. If Alpers, as the agent of defendants, exceeded his authority and sought to bind defendants by an unauthorized agreement, defendant had ample opportunity to repudiate the transaction. It chose to retain the benefits of the lease and cannot now successfully urge that it is bound only by the obligations thereof to the extent that Alpers possessed authority to contract in its behalf. By claiming the right to enjoy the fruits of the lease, with full knowledge of its terms, made and assented to by Alpers, it ratified the lease and assumed its burdens. (*Patterson* v.

*Crowell,* 15 Cal. App. 105, 108, [113 Pac. 700]; *Wilder* v.
*Beede,* 119 Cal. 646, 650, [51 Pac. 1083].)

While the evidence falls short of establishing a mutual
mistake in the preparation of the lease, it sheds light upon
the intention of the parties in entering into it. They had in
mind, and the lease provided for, the erection of a building
on the demised premises. They also contemplated, and the
lease specifies, a ten-year term. As the lease was executed
May 1, 1907, and as the term did not, by its express provi-
sion, begin until the first day of the succeeding August, it
is only reasonable to suppose that the parties likewise con-
sidered that three months was an adequate period of time
within which to erect the building. It is also reasonable to
conclude that they had in mind the uncertainty attending
the construction of a new edifice, and sought to safeguard
the interests of both parties by providing for the contingency
which actually arose. Viewed in the light of the circum-
stances under which the lease was made, and the matter to
which it relates (Civ. Code, sec. 1647), it is not hard to con-
clude that the parties understood, and fully intended, that
the period granted defendant to occupy, and have possession
of the premises, began when the building was completed and
occupied, and that the term of the lease was for the ten
years thence next ensuing.

[7] We are not disturbed, in arriving at this conclusion,
by the fact that the plural word "terms" is used in the ex-
tension clause instead of the singular word "term." While
the word "term," in instruments affecting real property,
may relate to the estate of the lessee, it also refers to the
time during which the estate may be enjoyed. It is capable
of use in both senses. Whether the one sense or the other
is to be attached to the form of expression depends upon the
construction of the instrument containing it. (*Finkelmeier*
v. *Bates,* 92 N. Y. 172, 178; *Taylor* v. *Terry, supra.*) In
the case at bar the facts applicable to the construction of the
lease, and that document itself, indicate that the word
"term" was intended to be used as relating to the time, or
period, of possession of defendant.

Respondent relies upon the decision of this court in
*Edward Barron Estate Co.* v. *Waterman,* 32 Cal. App. 171,
[162 Pac. 410], as fully upholding its position here. That
case is to be distinguished from this. This court was there

considering a lease which, at the outset, granted the demised premises to the defendants for the period of five years commencing on the fifteenth day of January, 1909, and ending on the fourteenth day of January, 1914, at the monthly rental of $250. A subsequent clause of the lease provided that, "In case the demised premises shall not be finished and ready for occupancy by the 15th day of January, 1909, the rent hereinbefore reserved shall *abate* and shall not be payable until said demised premises are ready for occupancy; but it is expressly understood that the failure to have said demised premises ready for occupancy by the 15th day of January, 1909, shall not be a cause for vacating, annulling or rescinding this lease, nor shall the lessees by reason thereof be entitled to any damage, *rebate* or recoupment except the rent hereinbefore expressly provided and agreed upon; but in that event the term of this lease shall be extended so that the lessee shall be *entitled* hereunder to the occupancy of the leased premises for the full term and period of five years from and after the date when said premises shall be ready for occupancy." (The italics are ours.) The premises were not ready for occupancy until April 1, 1909, two and one-half months after the beginning of the five-year term. The lessee entered into possession on that day, remaining only until January 15, 1914, on which date the designated five-year term ended. The lessor demanded the rent from January 15 to April 1, 1914, predicating his demand on the theory that the lease obligated the defendants to occupy and pay rent for the demised premises for a full term of five years, from April 1, 1909, the date of the actual occupancy of the premises. The plaintiff failed to recover. In affirming that judgment, the court merely considered the ordinary meaning and effect of the use of the words "rebated" and "entitled," and the sense in which each was used in the extension clause, and thereupon held that the lease was to be "construed to mean that although the leasehold interest was to take effect on January 15, 1909, nevertheless, if the lessor's delay in completing the demised premises operated to deprive the lessees of the use and occupation thereof on and after the date designated for the commencement of the term, then, and in that event, the rent was to be rebated, that is to say, proportionately deducted for the time that the occupancy by the lessees was delayed

through the noncompletion of the building; and the term of the lease, if the lessees so desired, extended for the full period of five years from the date when said premises were ready for occupancy."

A different state of facts exists in the case at bar. Here there is nothing in the extension clause which even suggests a rebating, or proportionate deduction of rent, for the time that the occupancy by the lessee was delayed through the noncompletion of the building. On the contrary, the clause expressly provided that the lessees should not be liable for rent until such time as the lessors could deliver possession. Neither, in the instant case, is there any word or expression in the clause by which the lessee is given a choice or opportunity to exercise its personal desire in the matter of the extension of the term. The language is plain and positive to the effect that the terms of the lease *shall* be correspondingly extended. We do not agree with respondent's contention that the word "shall" must be read "may," in order to properly construe the lease. The word "extended" was doubtless used in its ordinary sense. It means "stretched, spread, or drawn out." (Webster's New International Dictionary.) As thus used in the lease, it meant that the time, or period, granted appellant to occupy and have possession of the demised premises was, by the facts of the case, drawn out, or stretched, so that it would have a full period of ten years from and after the time the premises were ready for occupancy, and was not limited by the first provision in the lease designating a fixed and arbitrary term. This construction, we believe, fully coincides with the prior understanding of the parties.

The alleged errors of the lower court, in refusing to admit certain evidence relative to the acts and understanding of the parties as to the nature and effect of the extension clause, resulted in no prejudice to the appellant. Other evidence establishing the facts was admitted.

The judgment is reversed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1920, and the following opinion then rendered thereon:

44 Cal. App.—40

THE COURT.—In denying the application for a hearing in this court after decision by the district court of appeal of the first appellate district, division one, we desire to say that we do so for the reason that we are entirely satisfied with the construction of the lease adopted by the district court of appeal, entirely regardless of the parol testimony material on the question of reformation.

All the Justices concurred.