**E. I. DuPONT de NEMOURS AND COMPANY, Appellant,**

v.

**ZALE CORPORATION, Appellee.**

**No. 17522.**

Court of Civil Appeals of Texas, Dallas.

Dec. 18, 1970.

Rehearing Denied Jan. 8, 1971.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Joe A. Stalcup Stalcup, Johnson, Lipshy & Williams, Dallas, for appellee.

BATEMAN, Justice.

The appellant E. I. DuPont de Nemours and Company, hereinafter called DuPont, sued the appellee Zale Corporation, hereinafter called Zale, for specific performance under an option to purchase real property. Zale defended successfully on the ground that DuPont's notice of its exercise of the option was not timely.

The option was given in connection with a lease in which DuPont was named as tenant. The lease is dated August 10, 1964 and covers certain land and a building to be erected thereon by the lessors (Zale's predecessors in title) and completed by December 16, 1964 unless prevented by causes beyond the lessors' control, in which event the date of completion was to be extended by the period of interruption. The lease provides, however, that if the building is not completed and ready for occupancy by December 31, 1964, DuPont shall have the right to cancel the lease. The habendum clause states:

"4. TO HAVE AND TO HOLD the said demised premises for a term which shall commence upon the execution hereof and shall expire ten (10) years after the date TENANT takes possession of said premises. * * * The date TENANT takes possession hereunder shall be acknowledged by the parties hereto by a written instrument which shall be attached hereto and made a part hereof."

The parties to the lease signed a writing dated December 30, 1964 acknowledging that the building had been completed in accordance with the plans and specifications, and containing this language:

"And the undersigned Tenant hereby accepts the leased premises effective as of December 16, 1964, and agrees that the lease shall be in full force and effect for a period of ten (10) years commencing on that date, the undersigned then taking possession of said premises."

The option agreement provided:

"3. DU PONT shall exercise the within options by giving OPTIONORS written notice at least six (6) months prior to the end of the third lease year that DU PONT will purchase OPTIONED LAND, or if said option is not then exercised * * * written notice to that effect at least six (6) months prior to the end of the fifth lease year."

DuPont gave Zale notice of its exercise of the option on June 11, 1969, but Zale contends that the fifth lease year ended five years after the lease was executed, or on August 9, 1969, and thus the deadline for notice of the exercise of the option was February 9, 1969, making DuPont's notice several months late. DuPont contends, however, that the fifth lease year ended five years from the date it took possession of the premises, or on December 16, 1969, making the deadline June 15, 1969, and that the notice, being four days prior thereto, was therefore timely.

The trial court, sitting without a jury, denied specific performance and DuPont appeals. Its first two points of error present that as a matter of law the unambiguous terms of the instruments in question establish that the notice of exercise of option was timely.

The meaning of the phrase "fifth lease year" must be determined from a consideration of the entire lease, option agreement and the writing of December 30, 1964, rather than by resorting to any individual clause of any of them. These three documents are related and must be considered together and, if possible, all clauses of all of them harmonized and rendered consistent. Both parties agree that they are unambiguous.

We likewise see no ambiguity therein. It is clear to us from a consideration of

the tripartite agreement as a whole that the ultimate object or goal of the contracting parties was to create a landlord-tenant relationship *in futuro*, to have its beginning upon the completion of the building and the taking possession thereof by the tenant, and to remain in existence for a period or term of ten years thereafter. It is equally clear that by their use of the phrases "third lease year" and "fifth lease year" they referred to the third and fifth years of the ten year period.

■ The obvious intent of the contracting parties, as disclosed by the instruments themselves, was to make a lease of the ground and building for ten years. The indeterminate interval between the date of execution of the lease and the beginning of the ten year term was no part of the effective period of the intended landlord and tenant relationship. Under the common law that relationhsip would not begin until the tenant entered into possession and the landlord became entitled to rent. 49 Am.Jur.2d, Landlord and Tenant, § 15, p. 58; Simon v. Kirkpatrick, 141 S.C. 251, 139 S.E. 614, 54 A.L.R. 1348 (1927); Weissberger v. Brown-Bellows-Smith, 289 S.W.2d 813, 817 (Tex.Civ.App., Galveston 1956, writ ref'd n. r. e.).

■ This is not to say that the lease had no binding effect during that interval; the lessors were bound thereby to erect the building and to give possession to DuPont upon completion, when DuPont would become legally entitled to possession and liable for the rent. DuPont acquired an interest, and had it during the said interval, not as a tenant but as one legally bound and entitled to become a tenant at a somewhat uncertain date in the future. This interest or right is sometimes called an "interesse termini." 49 Am.Jur.2d, Landlord and Tenant, § 15, p. 59; Austin v. Huntsville Coal & Mining Co., 72 Mo. 535, 542 (1880); Morrison v. Chicago & N. W. Ry. Co., 117 Iowa 587, 91 N.W. 793 (1902); Howard v: Manning (1920), 79 Okl. 165,

192 P. 358, 360. As stated in 49 Am.Jur.2d, Landlord and Tenant, § 67, p. 108:

"A leasehold estate, however, such as a term for years, may be created at common law to commence in futuro, for in such a case a present interest vests, called an 'interesse termini,' although not an interest in possession, until the lessee enters into possession. The time between the making of the lease and its commencement in possession is no part of the term granted by it. The term is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself by virtue or the lease from the time it vests in possession."

■ It is not necessary for us to decide why the apparently inconsistent phrase "for a term which shall commence upon the execution hereof" was used in the lease. Perhaps it was designed, as testified by one of the witnesses, to obviate the possible effect of the rule against perpetuities. See 49 Am.Jur.2d, Landlord and Tenant, § 67, p. 109. It certainly meant, and we think it meant no more than, that the parties were legally and mutually obligated from the time the lease was executed; the lessors to erect a building they probably would not desire to build except for DuPont's obligation to occupy it and start paying rent for it when completed; and DuPont to become the tenant if the building were built according to the agreed plans and specifications. Be that as it may, when the option agreement was entered into and the phrase "fifth lease year" was used it is inconceivable to us that the parties intended to relate such phrase to the date of the lease. When the lease was signed in August, 1964, it was contemplated that the building would be completed and ready for occupancy in about four months, but no one could predict with certainty when it would be ready. It was possible that due to wars, strikes, scarcity of materials and labor, etc., completion could have been de-

layed for more than five years, in which event, under Zale's theory, the option to purchase would have to be exercised, if at all, before DuPont could even see the completed building. This quite remote possibility merely serves to illustrate the improbability that it was intended that the "third lease year" and the "fifth lease year" should refer back to the date of the lease.

We have not found or been cited to a decision of any appellate court directly in point on the facts, but the following cases from other jurisdictions are persuasive: Dunbar v. R. E. Williams Co., 358 S.W.2d 536 (Ky. 1962); De Pauw University v. United Electric Coal Companies, 299 Ill. App. 339, 20 N.E.2d 146 (1939); Fanta v. Maddex, 89 Cal.App. 513, 252 P. 630 (1927); Lang v. Pacific Brewing & Malting Co., 44 Cal.App. 618, 187 P. 81 (1920); and Young v. Dake, 5 N.Y. 463, 467 (1851), where we find this significant language:

> "The time between the making of the lease and its commencement in possession is no part of the *term* granted by it. The *term* is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself by virtue of the lease from the time it vests in possession. When, therefore, our statute speaks of a lease for a *term* not exceeding one year and of a contract for a lease for a period not longer than one year, it has reference to the time for the tenant to possess and occupy the premises, and does not include any previous or intermediate time."

DuPont's first two points of error are sustained.

In its third and fourth points of error DuPont alternatively asserts that even if the agreement be ambiguous it is nevertheless entitled to specific performance because: (3) the extrinsic evidence supports its position, and (4) its right to exercise the option should not be forfeited since it in good faith believed its notice was time-ly. Both parties remind us of certain rules of construction which they think should aid us in construing the agreement.

■ However, it is proper to consider such extrinsic evidence and apply such rules of construction only when the contract under examination is open to two reasonable constructions. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951) Both parties having agreed, and we having held, that the contract in question here is unambiguous, we do not find it necessary to pass upon these points of error.

■ Zale argues that specific performance was properly denied because this is an equitable remedy and DuPont failed to discharge its burden of showing that the granting of such relief would not operate inequitably on Zale, citing Kress v. Soules, 152 Tex. 595, 261 S.W.2d 703 (1953); also that DuPont failed to show that it had no adequate, complete remedy at law, citing Municipal Gas Co. v. Lone Star Gas Co., 259 S.W. 684 (Tex.Civ.App., Dallas 1924, affirmed 117 Tex. 331, 3 S.W.2d 790), and Prusiecke v. Ramzinski, 81 S.W. 771 (Tex. Civ.App., San Antonio 1904, no writ).

The applicable rule, we think, is thus stated in 49 Am.Jur., Specific Performance, § 92, pp. 107–108:

> "The courts assume, in almost every case in which action is brought to enforce specific performance of a contract for the sale of land or an interest therein, that money damages do not constitute an adequate remedy for the breach of such a contract, and take jurisdiction without the necessity of an actual showing that that is the case. This is said to be true in actions by the vendor as well as by the vendee. In other words, where land is the subject matter of the agreement, the jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing the inadequacy of a legal remedy in the par-

ticular case. Thus, it is said that whenever a contract concerning real property is in its nature and incidence entirely unobjectionable and possesses none of the features which might appeal to the discretion of the court, it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to give damages for its breach, and under such circumstances equity will enforce the contract as a *matter of right*, where there is nothing connected with the contract making its enforcement inequitable, irrespective of the plaintiff's right to recover damages for its breach." (Italics ours.)

See also Simpson v. Green, 231 S.W. 375, 381 (Tex.Com.App., 1921, holding approved and judgment adopted); 81 C.J.S. Specific Performance § 63, pp. 558–559; Milliken v. Townsend, 16 S.W.2d 259 (Tex. Com.App., 1929); Burnett v. Mitchell, 158 S.W. 800, 801 (Tex.Civ.App., Fort Worth 1913, writ ref'd); and Bishop v. Tartt, 48 Tex.Civ.App. 551, 107 S.W. 359, 361 (Tex. Civ.App., Galveston 1908, no writ).

■ Nevertheless, we think DuPont effectively discharged any such burden it may have been under. The contract on its face appears to be fair and reasonable. Zale purchased the property encumbered by the lease and the option agreement and there is no suggestion in the evidence of any fraud, misrepresentation or overreaching inducing the contract, and even in its two briefs in this court Zale does not suggest anything that would render a judgment of specific performance inequitable as to it. Under these circumstances, we think DuPont showed itself entitled to a judgment requiring Zale to sell the property to it under the terms of the contract.

The judgment is reversed and judgment here rendered granting specific performance as prayed.