# BACHTEL v. WILSON, SHERIFF.

## ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 446.    Argued November 14, 15, 1906.—Decided January 7, 1907.

The highest court of a State is, except in the matter of contracts, the ultimate tribunal to determine the meaning of its statutes.

Where the highest court of a State has, without opinion, sustained the validity of a state statute and there were at least two questions of construction before it, one of which excluded all Federal objections on which its decision can rest, until it is shown which construction the state court accepted, this court cannot hold the statute to be unconstitutional.

While a state legislature may not arbitrarily select certain individuals for the operation of its statutes, the selection in order to be obnoxious to the equal protection clause of the Fourteenth Amendment must be clearly and actually arbitrary and unreasonable and not merely possibly so.

Writ of error to review 74 Ohio St. 524, dismissed.

THE sole question in this case, as stated by counsel for plaintiff in error, is whether the following section of the statutes of Ohio contravenes section 1 of the Fourteenth Amendment of the Constitution of the United States:

"Every president, director, cashier, teller, clerk or agent of any banking company who shall embezzle, abstract or wilfully misapply any of the moneys, funds or credits of such company, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any notes, bonds, drafts or bills of exchange, mortgage, judgment or decree, or shall make any false entry in any book, report or statement of the company, with intent in either case to injure or defraud the company, or any other company, body politic or corporate, or any individual person, or to deceive any officer of the company, or any agent appointed to inspect the affairs of any banking company in this State, shall be guilty of an offense, and, upon conviction thereof, shall be confined in the peni-

tentiary, at hard labor, not less than one year nor more than ten years." Section 30, Act of March 21, 1851, entitled "An act to authorize free banking," as amended April 24, 1879, 76 O. L. 74; 2 Bates' Annotated Ohio Statutes, 6th ed., §§ 3821 –3885.

Plaintiff in error, who was cashier of the Canton State Bank, a bank incorporated under the above "free banking" act, was indicted in the Court of Common Pleas of Stark County for a violation of this section. A demurrer to the indictment having been overruled, he, before arraignment, sued out a writ of *habeas corpus* in the circuit court of that county. Thereafter the final judgment of the Supreme Court of the State in that proceeding having been adverse, he brought the case here on this writ of error.

*Mr. William A. Lynch* for plaintiff in error:

The prosecution of plaintiffs in error under section 30, as amended in 1879, violates section 1 of the Fourteenth Amendment. If the court holds that section 30 includes only the officials and agents of the so-called free banks, then this statute and these prosecutions deprive the plaintiffs in error of their liberty without due process of law and deny to them the equal protection of the laws, because the statute is enforcible against a very small part of a class of persons all of whom act under similar conditions and circumstances; if the court holds that section 30 includes the officials and agents of all incorporated banks, but excludes those of unincorporated private banks, the same discrimination is presented in principle, and the same result should follow. *Caldwell* v. *Texas*, 137 U. S. 692; *Railroad Co.* v. *Matthews*, 174 U. S. 96; *Railway Co.* v. *Ellis*, 165 U. S. 150; *Giozza* v. *Tiernan*, 148 U. S. 657.

The legislature has no power to treat the officials and agents of the so-called free banks as a class by themselves. It cannot create a class where none naturally exists. Classification cannot be made arbitrarily, but must be based upon some

difference which bears a just and proper relation to the attempted classification. *Railway Co.* v. *Ellis,* 165 U. S. 150; *Railroad Co.* v. *Matthews,* 147 U. S. 96, 104; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 539.

*Mr. Charles C. Upham* and *Mr. John W. Craine* for defendant in error:

The Fourteenth Amendment was not intended to repeal or annul existing legislation or special laws, existing at the time of its adoption, and when it was adopted the "Free Banking Act" remained as much unimpaired as it was prior to the adoption of that Amendment. While § 30 of the "Free Banking Act of 1851," Rev. Stats. §§ 3821–3885, was amended April 24, 1879, if that amendment is constitutional, well and good; but if it is unconstitutional the repealing clause falls with the amendment, and the original act is restored. This has been the uniform holding of the Supreme Court of Ohio, which is the conclusive judge of state enactments. 67 Ohio St. 303, 306; 66 Ohio St. 482, 488; 60 Ohio St. 273.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

Counsel predicate the unconstitutionality of this statute, not on its provisions standing by themselves, but on its relation to other statutes.

On February 26, 1873 (70 O. L. 40), an act was passed in terms incorporating savings and loan associations, but with powers such as in fact authorized the carrying on of ordinary commercial banking. Under this statute a few institutions were organized. In 1880 a general incorporation law was enacted (Rev. Stat. Ohio, 1880, § 3235 and following), and under it many banks were formed. In addition the banking statistics of the State show that there are several banks owned by unincorporated stockholders, copartnerships or individuals. Now, in no statute, save the free banking act, is there any

section with provisions kindred to those in section 30 above quoted, and the contention is that the plaintiff in error was denied the "equal protection of the laws" guaranteed by the Fourteenth Amendment, in that he was subject to prosecution and punishment for matters and things which, if done by a cashier of any similar institution, whether unincorporated or incorporated under the statutes of Ohio other than the free banking act, would not subject him to punishment. The cashiers of such other institutions are charged with duties substantially the same as those of this plaintiff in error, and yet the one may be punished for a violation of those duties and the others not. Can the State single out a few men and punish them for acts, when for like acts others are free from liability?

No opinion was filed by the Supreme Court of the State, and we, therefore, are not advised of the grounds upon which that court held section 30 valid; yet that court did hold it valid, and in the face of the same objections that are made to it here. If "any banking company," as found in the free banking act, is applicable to every banking-institution, no matter under what statute organized, there is no violation of the equal protection of the laws. Counsel for plaintiff in error contend that the Supreme Court could not have given so broad a meaning to those words, because they are in a section treating of crimes, and the rule of strict construction, which is universal in respect to criminal statutes, forbids its extension to institutions other than those incorporated under the act of which it is a part; because the title of the original act, "An act to authorize free banking," limits the scope of the statute, and therefore the applicability of every section therein; and, further, that as the free banking act, as originally passed, was only to be in force until the year 1872, it is improbable that a criminal provision of general application should be inserted in an act so limited in the matter of time. On the other hand, it is contended by the defendant in error that the words in section 30, "any banking company," em-

brace all banking institutions in. the State of Ohio, whether incorporated under the free banking act or not, and this because the words themselves are broad and comprehensive, because there is no other provision in the statutes for punishing those who commit the offenses named in said section, and it cannot be supposed that the legislature. intended that other like officials should be immune from punishment, .and also because section 30, both in the original act and also in the Revised Statutes, has no apparent connection with, in no way .modifies or affects any other sections, and might as well have been placed in the criminal code or by itself in the statutes.

But we are not called upon to decide which is the correct interpretation. The Supreme Court of a State is the ultimate tribunal to determine the meaning of its local statutes. We are not to assume that that which seems more reasonable to us also seemed more reasonable to and was adopted by it. Before we can pronounce its judgment in conflict with the Federal Constitution it must be made to appear that its decision was one necessarily in conflict therewith and not that possibly, or even probably, it was. It surely is not unworthy of consideration that the legislature, having before it the question of punishment for offenses committed by banking officers, having made provision therefor by one section in which it used the term "any banking company," may have believed that thereby it had included in its punitive provisions all banking institutions, and that a repetition of that section in other statutes was unnecessary. We do not decide that this was so, but we do hold that in view of the silence of the Supreme Court we are not justified in assuming that it held that it was not so.

Further, if we assume that the Supreme Court was of the opinion that section 30 was limited in its applicability to institutions incorporated under the free banking act, a question will then be whether the selection of officers of those institutions and subjecting them to punishment, when the officers of all other banking institutions, guilty of similar offenses, are

not so subject, is a denial of the equal protection of the laws. The power of a state legislature to select certain individuals for the operation of a statute is not an arbitrary power, one that it can exercise without regard to any principle of classification. And yet there is a power of selection. · The Fourteenth Amendment was not designed to prevent all exercise of judgment by a state legislature of what the interests of the State require and to compel it to run all its laws in the channels of general legislation. It may deem that social and business conditions, without penal legislation, afford ample protection to the public against wrongdoing by certain officials, · while such legislation may be deemed necessary for like protection against wrongdoing by other officials charged with substantially similar duties. The duties of a county or city treasurer may be very like those of the treasurer of a charitable or business corporation, and yet if the legislature prescribed penalties for misconduct of the former and none for similar misconduct of the latter it would be giving the amendment extreme force to make it efficient to overthrow the statute and thus relieve all treasurers from punishment. In short, the selection, in order to become obnoxious to the Fourteenth Amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so. *Carroll* v. *Greenwich Insurance Co.*, 199 U. S. 401, 411. Would the singling out for punishment of the officers of the free banks be an arbitrary selection? The free banks, though they may be like other banking institutions, are not in all respects the same.

But here, too, we are not called upon for an absolute decision, nor do we deem it necessary to determine whether there be such differences as will sustain the imposition of punishment of their officers, when none is cast upon the like officers of other banks: We only refer to these matters to indicate that there were at least two questions before the Supreme Court involving the validity of section 30, one of which, at least, presents no matter of a Federal nature, and in respect to each of which something may be said one way

and the other, and until it is shown what the Supreme Court did in fact decide, it is impossible to hold that the section as construed by it is in conflict with the Federal Constitution.

Under those circumstances it is clear that we have no jurisdiction, *Johnson* v. *Risk*, 137 U. S. 300, and cases cited in opinion, and the writ of error is

*Dismissed.*