[Sac. No. 2446.   Department Two.—December 13, 1917.]

## J. H. WARE, Appellant, v. T. L. QUIGLEY et al., Respondents.

TRUSTS—ACTION TO ESTABLISH TRUST—PLEADING—COMPLAINT INSUFFI-
CIENT.—A complaint in an action by B against A, setting forth a
written contract, whereby A and B jointly agreed to pay C a com-
mission for his services in procuring options on certain lands, and
alleging that A and B, "in accordance with said agreement," pro-
cured a certain option which was afterward extended or renewed in
the name of A upon payment by A of one thousand five hundred
dollars, and that B contributed labor and money in assisting in pro-
curing the original option and its renewal, and permitted the re-
newal in the name of A on A's promise that he would hold the same
as trustee "in accordance with the terms of said agreement," and
that, unless restrained, A will cause transfers to be made to him-
self under the option and appropriate the profits to himself, does
not show either an express trust or a resulting trust, and does not
state facts sufficient to constitute a cause of action.

ID.—EXPRESS TRUST—WRITTEN INSTRUMENT CONSTRUED.—A written in-
strument executed by A and B to C, whereby A and B agree to pay
C a commission for certain services to be rendered by him, cannot
be construed as creating an express trust, as between A and B, under
the provisions of section 852 of the Civil Code.

ID.—RESULTING TRUST—TRANSFER OF REAL PROPERTY.—Where, by a
written instrument, A and B agreed to pay C a commission for cer-
tain services in procuring options on lands, and A procured in his
own name one of the options contemplated and obtained a renewal
in his own name on payment of one thousand five hundred dollars,
agreeing with B that he (A) was to look for reimbursement to the
profits to be derived from a sale of the property, no resulting trust
was created under section 853 of the Civil Code, since there was not
only no transfer of title from the owners of real property to A,
but B neither paid nor agreed to pay any part of the one thousand
five hundred dollars which A paid for the option.

CONTRACTS—"OPTION" DEFINED.—An option is not a transfer of prop-
erty, but a mere right of election acquired by one under a contract
to accept or reject a present offer within a time therein fixed.

APPEAL from a judgment of the Superior Court of Sutter
County.   K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, for Appellant.

Butler & Swisler, for Respondents.

VICTOR E. SHAW, J., *pro tem.*—This is an appeal by plaintiff from a judgment of dismissal entered upon the sustaining of demurrers to the amended complaint without leave to amend.

The complaint alleges that defendants Evans, Gregory, and James were the owners of certain described lands located in what is known as Butte Basin, in Sutter County; that on February 2, 1913, there was executed by and between plaintiff and defendant Quigley an agreement as follows, to wit:

"Sacramento, Calif Feb. 8th, 1913.

"This agreement made this 8th day of Feb. 1913 between T. L. Quigley and J. H. Ware of Seattle, Wash, parties of the first part and Morris Brooke of the second part.

"In consideration of the help and assistance which the party of the second part is to give to the party of the first part in tying up or securing prices or options on certain properties in the Sacramento Valley more particularly known as the Butte Basin of said Valley, parties of the first part agree to pay the party of the second part a commission on all properties handled in said district of one third of a regular commission based on an understanding that a regular commission is five per cent.

"The party of the second part agrees to help parties of the first part in any way he can and shall be willing and ready to give said parties at any and all times such assistance as he or his office can give.

"He further agrees that he or his office shall not operate in the above described district excepting to give assistance to the parties of the first part.

"T. L. QUIGLEY.
"J. H. WARE.
"MORRIS BROOKE."

That *"in accordance with said agreement and the whole thereof"* plaintiff and Quigley procured from defendants Evans, Gregory, and James a ninety-day option taken in their joint names to purchase the land described in the complaint; that before the expiration of the option, "and in *full accordance with the terms of the foregoing agreement,* said

option was renewed for a period of six months . . . by virtue of an agreement and understanding by and between plaintiff and defendant T. L. Quigley'' for an additional period of six months, ''taken in the name of defendant T. L. Quigley but for the benefit of himself and plaintiff *in accordance with the provisions of the foregoing agreement,''* which option as renewed provided that the same should be extended for a period of six months upon the payment of one thousand five hundred dollars to the owners of said land, which sum, pursuant to an agreement between the plaintiff and Quigley, the latter paid, upon an agreement that he should have recourse alone to the profits of any sale of said lands for repayment of the amount so advanced, with legal interest thereon; that prior to the expiration of the extended option so obtained by Quigley, and in consideration of the one thousand five hundred dollars paid therefor, plaintiff, who was not familiar with its terms or the expiration thereof, notified Quigley that the option should be exercised by a purchase of the property unless an extension of the option should be obtained, and that he was ready and willing to contribute his part necessary to consummate such purchase or obtain such extension, and also demanded full information as to the terms and conditions thereof, to which Quigley made no response; that about January 3, 1914, Quigley obtained either an extension of the option or a new option expiring in January, 1915, for the purchase of the property with the purpose and intent to appropriate to himself the profits derived therefrom; that plaintiff in *carrying out the terms of said contract* contributed both time and money in assisting in procuring the original option and permitted the renewal thereof in the name of Quigley upon his promise 'that he would hold the same as trustee *in accordance with the terms of said agreement;* that unless restrained from so doing Quigley will exercise the said option and cause transfers of the property to be made by the owners of the land to purchasers obtained by him, at a profit of many thousands of dollars, which he will appropriate to his own use in a manner so that plaintiff will be unable to reach or obtain any part thereof. The prayer of the complaint is for a decree that plaintiff is the owner of a one-half interest in and to any contracts or options which Quigley may have for the purchase of said property and that he be enjoined from exercising the same other than in conjunction

with plaintiff, and that defendants Evans, Gregory, and James be enjoined from making any deeds or transfers of the property under any contract or option with Quigley other than acting in conjunction with plaintiff.

To this complaint the defendants Evans, Gregory, and James interposed a general demurrer and the defendant Quigley interposed a demurrer upon both general and special grounds, both of which, as stated, were sustained without leave to amend.

Appellant insists that the facts pleaded created a trust in Quigley for the benefit of plaintiff. This contention is based upon the theory, first, that the written agreement made by himself and Quigley with Brooke constituted an express trust created by written instrument within the meaning of section 852 of the Civil Code, and, second, that "a trust is presumed to result in favor" of plaintiff by reason of the fact that he contributed several hundred dollars in labor and money in procuring the option.

Neither position is tenable. Reference to the document upon which appellant based his first contention shows it to be a contract, *not between plaintiff and Quigley,* but by both of them as one of the parties thereto with Morris Brooke, the subject of which was not a trust, nor, indeed, any contractual relation whatsoever between plaintiff and Quigley, but certain services to be rendered by Brooke for which plaintiff and Quigley agreed to pay him a commission. It is not possible to construe this document as creating an express trust by an instrument in writing as provided by section 852.

Neither does the complaint contain facts showing the creation of a resulting trust as defined in section 853 of the Civil Code. This section provides that "when a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." The authorities *Faylor* v. *Faylor,* 136 Cal. 92, [68 Pac. 482], and *Moultrie* v. *Wright,* 154 Cal. 520, [98 Pac. 257], cited by appellant in support of his contention, all involve facts where the title to the property was conveyed to one person, the consideration for which was paid by another, thus bringing the cases directly within the purview of said section. By section 1039 of the Civil Code a transfer is defined as "an act of the parties, or of the law, by which the

title to property is conveyed from one living person to another." An option is not a transfer of property. No title is conveyed thereby. It is a mere right of election acquired by one under a contract to accept or reject a present offer within the time therein fixed. (Am. & Eng. Ency. of Law, p. 924.) Not only was there no transfer of title to the real property made by the owners thereof to Quigley, but, as appears from the allegations of the complaint, plaintiff neither paid nor agreed to pay any part of the one thousand five hundred dollars which Quigley paid for the option. Under the agreement he was to look for reimbursement to the profits derived from a sale of the property. Hence, it seems clear that no trust was created under the provisions of said section 853 of the Civil Code.

Not only is the complaint for the reasons given obnoxious to the general demurrer interposed, but it is apparent from the views expressed that the allegations of the complaint based upon the instrument are wholly inconsistent with the terms thereof, which does not purport to have been made by and between plaintiff and Quigley as to any subject of contract between them. As stated in the special demurrer of Quigley, it is impossible to say what is meant by the allegations that the options were procured and the renewals made in *full accordance with the terms of the agreement,* and the renewal thereof obtained in Quigley's name with the consent of plaintiff *"in accordance with the provisions of the foregoing agreement,"* nor what is meant by the allegation that plaintiff *in carrying out the terms of said agreement* contributed several hundred dollars in labor and money.

The demurrers were properly sustained and the judgment is affirmed.

Melvin, J., and Henshaw, J., concurred.