[S. F. No. 12819. In Bank.—August 31, 1928.]

TELEGRAPH AVENUE CORPORATION (a Corporation) et al., Respondents, v. KARL RAENTSCH, Appellant.

Marvin C. Hix for Appellant.

Breed, Burpee & Robinson for Respondents.

F. G. Athearn, Athearn, Chandler & Farmer, Dunn, White & Aiken and Chapman, Trefethen & Chapman, *Amici Curiae.*

THE COURT.—The petition of appellant for hearing by this court after decision by the district court of appeal, first appellate district, division two, was granted because of the importance and novelty of the questions involved upon the appeal and to enable this court to make a further study of the points so earnestly argued in the briefs. Upon careful consideration, we are satisfied with the solution of these matters in the opinion heretofore filed herein by the district court of appeal, Nourse, J., and adopted said opinion as and for the opinion of this court, as follows:

"Plaintiff sued in unlawful detainer to recover possession of a block of property located in the city of Oakland. Trial was had before the court sitting without a jury and resulted in a judgment canceling the lease under which the property was held, awarding possession to the plaintiff and a money judgment against the defendant Raentsch in the sum of $38,583.35. This defendant has appealed from the judgment upon a typewritten record.

"The lease in question was executed under date of December 31, 1923, and covered a term of ninety-nine years which specified monthly rentals graduated from $2,475 to $5,000 each month. The lease specified among other things that in the event of a default in the payment of rent continuing for a period of five days after written notice thereof served upon the lessee and continuing for a period of twenty days after written notice thereof served upon any mortgagee of the lease who had given written notice of his mort-

gage, the lessor might, at his option, declare the terms of the lease ended and re-enter the premises.

"After the lessee had entered into possession under the lease he executed a mortgage of the lease to the defendant Bird and a second mortgage to the defendant Jensen. The latter gave written notice of his mortgage to the lessor entitling him to notice of nonpayment of rent within the provisions of the lease above noted. The premises were occupied as a public market and sublet to some fifty subtenants. On July 30, 1925, the lessor served upon the lessee and mortgagees a notice declaring a default in the payment of the July rent, amounting to $3,850, and at the same time served upon them the statutory notice to pay the rent alleged to be due or to quit the premises within three days. On August 7, 1925, similar notices were served by the lessor touching the nonpayment of rent due for the month of August. On September 1, 1925, notices to pay the rentals for July and August or to quit the premises were served upon the lessee, the mortgagees and eight of the subtenants. On September 10, 1925, this action was commenced against all these parties who had been served with the notice just mentioned. On September 18, 1925, at the instigation of the plaintiff in the action, a receiver was appointed *ex parte* who took possession and control of the premises, collected all rents from subtenants which were paid to them and remained in possession until the entry of judgment. After numerous delays the cause was brought to trial on April 19, 1926, and this resulted in a judgment for the plaintiff as above stated. The money judgment represented the sum of $40,700, total rent claimed to have been due, less the sum of $2,116.65 which was voluntarily remitted by plaintiff on defendant's claim that this was not due under a separate defense, which was stricken from the answer during the early course of the trial. Of the sum awarded $29,150 represented the rent which accrued during the occupancy of the receiver.

"On this appeal the lessee, who is the only defendant appealing, advances the argument that the court was without jurisdiction to try the action because the code section relating to proceedings of this nature does not include a tenancy for a ninety-nine-year period. The argument is that section 1161, Code of Civil Procedure, providing that

'a tenant of real property, for a term less than life, is guilty of unlawful detainer, etc.,' uses the expression 'term less than life' as applying to a term of years less than the usual expectancy of a man's life. In support of the point it is argued that the expectancy of life being less than sixty-one years at all events for any male person at any age and less than forty-five years for any male person capable of entering into a leasing contract, we must assume that the legislature intended to apply the provisions of the unlawful detainer act to a tenancy for a term of years less than this term of expectancy. The argument is not sound because it requires an unreasonable and uncertain interpretation of a statute which without being strained at all is capable of a reasonable and certain interpretation. ■ The word 'term' as applied to estates is frequently used as referring to the character of the estate as well as to the time or period of enjoyment. Blackstone, volume 2, page 144, says: 'Thus the word term does not merely signify the time specified in the lease, but the estate also and the interest that passes by the lease; and therefore the term may expire during the continuance of the time' (*Lang* v. *Pacific Brewing Co.*, 44 Cal. App. 618 [187 Pac. 81]). Section 761 of the Civil Code defines estates in real property in respect to 'the duration of their enjoyment' as including estates of inheritance, for life, for years, and at will. The word 'term' as used in section 1161, Code of Civil Procedure, might well refer to the 'duration of enjoyment' of the estate and as so interpreted the section would become applicable to estates for years and estates at will which are expressly classified in section 761 of the Civil Code as estates less than life. As so interpreted the section would have a reasonable and certain meaning and it is such an interpretation which should be put upon it.

■ "The argument is made that section 1161, Code of Civil Procedure, is unconstitutional because it deprives the lessee of equal protection of the law in that, as interpreted by the Supreme Court in *Arnold* v. *Krigbaum*, 169 Cal. 143 [Ann. Cas. 1916D, 370, 146 Pac. 423], it denies a defendant in an unlawful detainer action the right to a set-off, counterclaim or cross-complaint. The trend of the argument is that this is inequitable and unfair to defendants in proceedings of this character because in an action by the landlord against the tenant for rent, as well as in an action by

the tenant against the landlord for breach of covenant, the defendant may plead a set-off, counterclaim or cross-complaint and that such defenses may be pleaded in other actions in equity and at law. ■ The argument is without merit because the code sections relating to unlawful detainer provide a uniform, though special and summary, proceeding for a quick and ready determination of the forfeiture of the lease and these provisions relate to all actions brought for that purpose. The classification which the legislature has made cannot be said to be arbitrary or made for the mere purpose of classification, but it is based upon a natural and unreasonable distinction between cases of this character, which require prompt hearing and a particular form of judgment, and the ordinary cases at law or in equity.

■ "Failure of the respondent to plead that it had served notice on all the subtenants and to join them as parties to the action was raised by demurrer going to the sufficiency of the complaint. It does not appear that the subtenants were in default, and, if they were not, it would certainly have been futile to have given them notice to pay the rent or quit and it would likewise have been unnecessary to join them as parties defendant in this action. (*Tujague* v. *Superior Court,* 69 Cal. App. 35, 39 [230 Pac. 198].)

■ "It is argued that the notices given by the respondent to pay rent or to quit the premises were premature because they were served upon the same day as notice of default of the rent; that these were ineffective because they did not take into account a claim for money due the appellant from the respondent and therefore demanded the payment of rent in excess of the amount due; and that there was no proof that the individual who served the notices was authorized to act for the respondent in that particular. The argument is that inasmuch as the lease provided that the lessor might claim a forfeiture if the rent was not paid within five days from the service of the notice upon the lessee and within twenty days after service of notice upon the mortgagee, that the lessor could not institute proceedings under the unlawful detainer statute until these respective periods had passed. There is little merit in the argument because, if we should assume that the notice to pay rent or quit served on July 28, 1925, was premature, the

same could not be said as to the notice to the same purpose served on September 1, 1925. The claim of default for non-payment of the July rent was sufficient in itself to justify a claim of forfeiture of the lease and this was served more than twenty days before the service on September 1st of the notice to pay rent or quit the premises. The fact that in the interim another claim of forfeiture because of non-payment of the August rent was served cannot affect the lessor's right to proceed under the September notice. It is equally clear that the validity of the notice to pay rent or quit the premises is not affected by the claim or offset against the lessor. The notice specified the rent which was due under the terms of the lease. The claim of offset was a disputed claim based upon appellant's theory that the respondent was in fact interested under another name as one of his subtenants and as such owed the appellant the sum of $2,000. The validity of this claim was not tried because the trial court properly ruled that a counterclaim was improper in an action of this nature, but the respondent voluntarily remitted from the judgment the sum of $2,000 in addition to interest thereon. There is nothing, however, in the record to show the reason for the remission of this portion of the judgment and it does not therefore appear that it should have been deducted from either the July or August rent due from the lessee.

"Criticism is made of the action of the trial court in refusing to give the appellant a continuance of the trial of the case on his motion made in open court on the day which had been set for the trial. The ground for the motion was the absence of a witness which appellant claimed to be material in the proof of his case, but it appears that this witness was available and could have been called by the appellant during the course of the trial. No effort was made to call the witness and we are satisfied that the trial court did not abuse its discretion in refusing appellant's motion.

"The more serious question is the propriety of that portion of the judgment which awarded to the respondent the full amount of rental claimed to be due under the lease during the period of occupancy by the receiver. The receiver was appointed upon the application of the respondent. The trial court found 'that on the 18th day of Sep-

tember, 1925, said receiver did . . . enter into the control and possession of said premises as such receiver and ever since said date has been and now is in control of said premises, as such receiver, and has collected the rents from subtenants of said premises but no part of said rents has been paid to either plaintiff or defendant. . . . ' On the part of the appellant it is claimed that the action of the court in giving the receiver the sole possession and control of the premises was in effect an eviction of the tenant at the instance of the landlord, which automatically stopped the accrual of rental from the tenant under the lease. The facts are disputed that the receiver did take and hold exclusive possession during the period found by the trial court and that he collected all rents that were paid by subtenants during that period and that he ousted or dispossessed other subtenants from the premises.

"It is conceded by all parties that there is no liability on the part of the lessee to pay rent if he is evicted (36 C. J., sec. 1113). The respondent argues that the appointment of the receiver was for the benefit of all parties and did not in itself oust the tenant from his right to possession, but the facts of this case, as found by the trial court, do not support the respondent. The jurisdiction of the court to appoint a receiver in proceedings of this nature was added to section 564, Code of Civil Procedure, by an amendment in 1919 (Stats. 1919, p. 251). There are no California cases which have come to our attention interpreting this amendment to the code in so far as it relates to the question before us. The great weight of authority from other jurisdictions uniformly supports the doctrine that the appointment of a receiver who assumes full possession and control of the premises in a proceeding of this nature is an eviction of the tenant and relieves him from payment of the rent called for by the lease during the period of the receiver's occupancy. The respondent has not called to our attention any authorities in opposition to this rule and our own examination satisfies us that the rule is practically uniform.

"The rule follows the general principle that any act of the landlord which results in dispossessing the tenant and which deprives him of the use, occupancy and enjoyment of the premises amounts to an eviction. The reason for the rule is that rent is the landlord's right to receive from the

tenant compensation for the benefits that are accruing to the tenant from his possession and enjoyment of the land, and that when the tenant is deprived of this right of possession and enjoyment by the action of the landlord the right of the landlord to receive compensation automatically ceases. (Gilbert, Treatise on Rent, p. 145; *Hoeveler* v. *Fleming,* 91 Pa. St. 322; *Palmtag* v. *Doutrick,* 59 Cal. 154, 167 [43 Am. Rep. 245] ; *Veysey* v. *Moriyama,* 184 Cal. 802, 805 [195 Pac. 662] ; 16 R. C. L., pp. 684, 948; 36 C. J. 255; 15 Cal. Jur. 679.)

''It is, of course, true that the appointment of a receiver is not in every instance an ousting of possession of the property over which the receiver exercises control, but where, as here, a receiver is appointed at the instance of the plaintiff in an action in unlawful detainer, the very nature of which is to terminate the tenancy and to place the plaintiff in possession of the property, the receiver in such a case must be treated as the receiver of the party entitled to the possession (*Sturgis* v. *Knapp,* 33 Vt. 487, 528), and where, as here, this receiver takes exclusive control and possession of the premises, all of which were occupied by subtenants under separate tenancies, and either collects the rents from such subtenants or removes them from possession, he must be treated as a receiver for the landlord whose entry into possession is an eviction of the lessee. (*Mariner* v. *Chamberlain,* 21 Wis. 253, 256.)

''It follows from what has been said that that portion of the judgment awarding the respondent the sum of $29,150 rentals becoming due under the lease during the receiver's occupancy of the premises was error. The appellant insists that because of section 1174, Code of Civil Procedure, the error demands a reversal of the judgment. The code section permits the tenant, after judgment adverse to him, to redeem by depositing in court the amount found in the judgment to be due within five days from the entry of the judgment, and the same privilege is accorded to any subtenant, mortgagee of the term, or other party interested. This is, of course, a privilege granted to every defendant brought in under proceedings of this nature and it is a substantial right of which he cannot be deprived by any action of the trial court, but it does not follow from this that because the judgment was excessive in this respect it must be

reversed. The appellant might have paid to the clerk of the court the sum which he admitted to be due and owing under a proper judgment and respondent would then have been called upon to confess the error or take the consequences. Nothing of this kind was done and it seems evident from an examination of the entire record that the appellant was not concerned in any stage of the proceedings with the protection of his rights under the lease, but that his entire course of action was to delay and hamper the respondent in the conduct of the proceedings. We are satisfied from our examination of the record that the judgment should be modified by striking therefrom the sum of $29,150 and that the inclusion of this sum in the judgment, though error of a substantial kind, would not justify a reversal of the judgment under the facts of this case, because it appears from appellant's conduct that this error did not prejudice his rights in this litigation.''

The judgment is modified by striking $29,150 therefrom and, as so modified, affirmed, with costs to appellant.

Rehearing denied.

Curtis, J., dissented.