[Civ. No. 4462. Third Appellate District.—January 28, 1932.]

W. J. BRUCE et al., Appellants, v. T. CLARK MIEIR et al., Defendants; ERIC LANGE, Respondent.

R. T. Lightfoot for Appellants.

Haas & Dunnigan, Walter F. Haas and H. C. Johnston for Respondent.

MILLER, J., *pro tem.*—This is an appeal from a judgment of nonsuit entered in the above cause at the conclusion of plaintiffs' case upon the trial thereof.

The case grows out of an option to purchase certain letters patent which T. Clark Mieir had obtained from appellants, who were the owners of a two-thirds interest in said letters patent, and which option provided for certain payments, aggregating $9,000, to be made by Mieir to the owners in order to preserve his rights under such option. Mieir also had an option from one Reynolds, who owned the other one-third of said letters patent, to purchase said one-third interest for $6,000. These two options were put in separate escrow with the Commercial National Bank of Los Angeles. Subsequently, and on November 13, 1925, Lange and Mieir entered into an agreement which, among other things, recited that Mieir was the owner of an option to purchase said letters patent, and further recited that Lange was the owner of an option to purchase all of the subscribed capital stock of Western Ironite Sash Weight Company. The agreement further recited that Mieir held a contract for the payment to him of a commission of $1500 upon the exercise by Lange of his option to purchase said capital stock, and it was by said agreement provided that Lange would exercise his said option; that he would advance to said Mieir $2,500, to be repaid only out of dividends of said stock; that he would pay $1,000 on account of the purchase price of said patents, and furnish said Western Ironite Sash Weight Company a working capital of $4,000; that Mieir would assign to Lange the said letters patent, subject to the compliance with said options to purchase same; that Mieir would assign to Lange all interest in said options and execute an order on said escrow in favor of Lange for all of said patent rights, and obtain from the owner of said letters patent a modification of a license to manufacture under said letters that was then held by the Western Ironite Sash Weight Company, in such form as Mieir and Lange should agree to; that Mieir should pay the $1500 commission into said escrow on account of the purchase price of said letters patent; that he was to devote his entire time to the management of said Western Ironite Sash Weight Company, for which service he was to receive $100 a week out of the net profits of said company; that the profits of said com-

pany should be applied first to the payment of salary to Mieir, and second to the several payments provided for in the escrow covering the purchase of said letters patent, and that when said purchase price should be paid, Lange would transfer to said Mieir one-third of the stock of the Western Ironite Sash Weight Company; that should the profits be insufficient to pay Mieir his salary and pay for said patent rights, then the rights of Mieir under said agreement should terminate, and that Lange should thereafter be under no obligation to Mieir in respect to said properties, or otherwise.

On November 14, 1925, the contemplated modification of license was entered into by and between Reynolds, Mendell and Bruce, the owners of said letters patent, and Eric Lange, and, among other things, provides: "It is understood between the parties hereto that the parties of the first part have entered into escrows for the sale of said letters patent to T. Clark Mieir, and that the party of the second part, Eric Lange, has entered into conditional agreements with said T. Clark Mieir, contemplating the making of the payments specified in said escrows. . . . "

On November 16, 1925, Mieir executed an instrument to Lange purporting to "assign, sell and transfer unto Eric Lange the whole right, title and interest" in and to said letters patent.

On November 17, 1925, T. Clark Mieir, who had in the meantime closed the Reynolds escrow, instructed said escrow-holder that he had executed an assignment of said letters patent to Eric Lange, and that he also assigned his interest in the other escrow (that affecting Mendell and Bruce), to Eric Lange, and stated with reference to said Lange "and instruct you that he is to make payments as called for in this escrow, and when he has complied with same is to receive all papers in the escrow that were to have been delivered to me". At the bottom of that letter appears these words: "Assignment accepted. Eric Lange." A check for $1500 that was thereafter applied on the option so assigned, was signed by Lange & Bergstrom, Inc., by Eric Lange, Pres. Lange testified it was paid at the request of Mieir. But even if it was Lange's own money paid by him as his own payment on the option that Mieir had assigned to him, it would not bind them to make further payments on the option. An option is something that

means what the term implies—its terms may or may not be complied with at the election of the optionee. If the terms be complied with, the optionee has rights that he or his assignee may enforce, but if he elects not to comply, the optionor may not compel compliance with its terms. An option to buy is not synonymous with an agreement to buy. The assignment from Mieir to Lange does not mention appellants, and makes them no promise. There is no privity between them and Lange. Section 1559 of the Civil Code provides: "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

The record before us does not show that Lange expressly nor impliedly promised the plaintiffs Mendell and Bruce, or either of them, to make them any payment under the option they had given Mieir, and which Mieir had assigned to Lange. Lange's promise, if in fact it can be termed a promise, made in these words—"Assignment accepted"—was one for the benefit of Mieir and not for the benefit of a third party. If third parties could thereby benefit at all, it would be only incidentally, and therefore they would have no right to enforce it. (*Tarpey* v. *Curran,* 67 Cal. App. 575 [228 Pac. 62]; *Kolberg* v. *Sherwin-Williams Co.,* 93 Cal. App. 609 [269 Pac. 975]; *Spurrier* v. *Burnett,* 270 Ky. 736 [270 S. W. 25]; *Cripple Creek State Bank* v. *Rollestone,* 70 Colo. 434 [202 Pac. 115, 117].)

In the case of *Armstrong Co.* v. *Shell Co. of California,* 98 Cal. App. 767, at 775, 776 [277 Pac. 887, 890], it is declared: "The assignee did not expressly obligate itself to perform the covenants binding upon the assignor. In order that an assignee may be held liable under a contract, there must be an express assumption." (*Miskimen* v. *Culbertson,* 162 Ill. 236 [44 N. E. 396].) But in any event, if it was an option, and not an agreement to buy that was assigned by Mieir to Lange, even if Lange expressly or impliedly agreed to assume Mieir's obligations to Mendell and Bruce, he could at any time—as could Mieir, had he not assigned the option—have declined to make further payments and forfeited his rights under the option.

For the reasons stated, the judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., con-