[L. A. No. 19887.  In Bank.  May 3, 1948.]

WARNER BROS. PICTURES, INC. (a Corporation), Appellant, v. JOAN BRODEL et al., Respondents.

Freston & Files, Ralph E. Lewis and Gordon L. Files for Appellant.

Oscar R. Cummins, Jennings & Belcher, Frank Belcher, Max Radin, Aaron J. Blackman and Robert Kingsley for Respondents.

TRAYNOR, J.—On March 27, 1942, plaintiff, a producer of motion pictures, entered into a written agreement with defendant Brodel, then a minor seventeen years of age, wherein the latter promised to perform dramatic services exclusively for plaintiff "for and during the term of the agreement." The instrument provided that "the term of this contract" should commence on March 30, 1942, and continue thereafter for 52 weeks; that during this period defendant should receive a weekly salary of $600; and that "in consideration of the terms and covenants of this agreement and of the consent of the producer to the amount of compensation as herein set forth" plaintiff should have six separate options to extend the term of defendant's employment for additional successive periods of 52 weeks each, at a progressively higher salary, namely, $750, $1,000, $1,250, $1,750 and $2,250 per week. Under section 36 of the Civil Code the agreement was submitted to the Superior Court of Los Angeles County for approval, and on May 12, 1942, the court approved the agreement and incorporated it in its order. This incorporation makes it clear that the court approved the whole agreement including the options.

When this order was made, the pertinent provisions of section 36 read as follows: "A minor cannot disaffirm a contract, otherwise valid, to perform or render services as actor, actress, or other dramatic services, as participant or player in professional sports, including, but without being limited to, professional boxers, professional wrestlers and professional jockeys, where such contract has been approved by the superior court of the county where such minor resides or is employed. Such approval may be given on the petition of either party to the contract after such reasonable notice to the other party thereto, as may be fixed by said court, with opportunity to such other party to appear and be heard."

Defendant performed her obligations under the agreement for the first 52 weeks, and, when plaintiff elected to exercise the first three options, she continued to perform for three

additional periods of 52 weeks each. In January, 1946, defendant reached her majority. On February 13, 1946, plaintiff gave notice to defendant of its election to exercise the fourth option. Defendant replied by notifying plaintiff that she disaffirmed her agreement and would render no further services to plaintiff. Immediately thereafter she entered into an agreement with the other defendants, also motion-picture producers, to perform dramatic services for them.

Basing its cause of action on the foregoing facts alleged in its complaint together with the allegation that when the other defendants entered into their contract with defendant Brodel, they were aware of her obligations toward plaintiff and contrived to circumvent plaintiff's rights, plaintiff brought this action for declaratory relief and for an injunction preventing defendant Brodel from performing and the other defendants from causing her to perform dramatic services for anyone except plaintiff. The trial court sustained demurrers interposed by defendants, without leave to amend, and dismissed the action. Plaintiff appeals.

Plaintiff contends that the approval of the agreement by the court deprived defendant Brodel of the right of disaffirmance. Defendant contends that this approval deprived her of the right of disaffirmance only during her minority but did not preclude disaffirmance within a reasonable time after she reached majority. Defendant contends also that section 36 applies only to contracts of employment; that options for a contract of employment are not contracts of employment; that therefore the court had no power to approve the option features of the agreement; and that the statute cannot be applied to the present case without depriving defendant of her constitutional rights under the equal protection of the laws clause of the United States Constitution and the provisions against special laws in section 25 of article IV of the California Constitution.

Section 35 of the Civil Code provides: "In all cases other than those specified in sections thirty-six and thirty-seven, the contract of a minor . . . may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterwards." Section 36 provides that "a minor cannot disaffirm a contract" approved by the court. Defendant contends that the use of the phrase "a *minor* cannot disaffirm" in section 36 (italics added) makes it clear that disaffirmance of a contract approved by the court is barred only for the period of the minority of the party to the contract

and that the minor can disaffirm the contract during the second period referred to in section 35, namely, within a reasonable time after majority. This contention takes no account of the fact that section 35 grants the right of disaffirmance before or after majority only in cases ''other than those specified in section thirty-six and thirty-seven,'' or of the fact that it speaks of disaffirmance after majority as disaffirmance ''by the minor,'' and thus specifies the status of the person when he made the contract, not his status when he disaffirms it. There is no need to repeat in other sections of the Civil Code the provisions in section 35 as to who may disaffirm and when disaffirmance may be declared; they are part of the law of disaffirmance in that code and must therefore be read into other sections of the code relating to disaffirmance of contracts of a minor. Moreover, section 36 confers upon the superior courts the power by their approval of contracts of minors to remove from the obligations incurred therein the uncertainty that otherwise attends contract obligations of a minor because of his right of disaffirmance.

█ Disaffirmance of a contract, executed or executory, whether declared before or after majority has the effect of a rescission. (*Flittner* v. *Equitable Life Assur. Soc.*, 30 Cal. App. 209, 216 [157 P. 630]; *Tracy* v. *Gaudin*, 104 Cal.App. 158, 160 [285 P. 720]; see 1 Williston, Contracts (rev. ed.), § 231.) If section 36 prohibited disaffirmance of a contract approved by the court during minority only, but permitted disaffirmance thereof after majority, it would not remove the uncertainty attending the right of disaffirmance. If the section merely postponed the exercise of the minor's right to disaffirm, it would thereby only prolong the uncertainty, since a minor who intended to disaffirm the contract would have to leave the matter in suspense until he reached majority.

Defendant's contention that a court has no power under section 36 to approve an option such as the options in the agreement between parties is based on the language of the section providing for approval of a contract ''to perform or render services.'' Defendant contends that since an agreement granting an option is a contract to keep an offer open and as such is distinct from the contract to which the option relates, an option for a contract of employment is therefore not itself a contract ''to perform or render services.'' █ It is universally accepted that an option agreement is a contract distinct from the contract to which the option relates, since it does not bind the optionee to perform or enter into the

contract upon the terms specified in the option. It does not follow, however, that by entering into an option contract, whereby he irrevocably promises to render services to the optionee upon the timely exercise of the option by the latter, an optionor does not enter into a contract "to perform or render services."

In an option contract the optionor stipulates that for a specified or reasonable period he waives the right to revoke the offer. (*Bard* v. *Kent,* 19 Cal.2d 449, 452 [122 P.2d 8, 139 A.L.R. 1032] ; *Hicks* v. *Christeson,* 174 Cal. 712, 716 [164 P. 395] ; *Seeburg* v. *El Royale Corp.,* 54 Cal.App.2d 1, 4 [128 P.2d 362] ; *Bruce* v. *Mieir,* 120 Cal.App. 287, 290 [7 P.2d 1037] ; see *Johnson* v. *Clark,* 174 Cal. 582 [163 P. 1004] ; *W. G. Reese Co.* v. *House,* 162 Cal. 740 [124 P. 442] ; *Tufts* v. *Mann,* 116 Cal.App. 170, 178 [2 P.2d 500] ; Restatement, Contracts, § 47.) Such a contract is clearly different from the contract to which the irrevocable offer of the optionor relates, for the optionee by parting with special consideration for the binding promise of the optionor refrains from binding himself with regard to the contract or conveyance to which the option relates. An option contract relating to the sale of land is therefore "by no means a sale of property, but is a sale of a right to purchase" (*Hicks* v. *Christeson,* 174 Cal. 712, 716 [164 P. 395] ; see *Smith* v. *Bangham,* 156 Cal. 359, 365 [104 P. 689, 28 L.R.A. N.S. 522] ; *Ware* v. *Quigley,* 176 Cal. 694, 698 [169 P. 377] ; *Ludy* v. *Zumwalt,* 85 Cal.App. 119, 130-131 [259 P. 52] ; *Alegretti* v. *Gardner,* 74 Cal.App. 564, 566 [241 P. 408] ; *Howard* v. *Hobson Co.,* 38 Cal.App. 445, 455 [176 P. 715] ; *Menzel* v. *Primm,* 6 Cal.App. 204, 209 [91 P. 754]), or, as stated in *Shaughnessy* v. *Eidsmo,* 222 Minn. 141 [23 N.W.2d 362, 363, 166 A.L.R. 435] : ". . . A contract conferring an option to purchase is . . . an irrevocable and continuing offer to sell, and conveys no interest in land to the optionee, but vests in him only a right in personam to buy at his election."

Nevertheless, while the optionee incurs no liability with ˜ gard to the contract or conveyance as to which he holds an tion, the optionor has irrevocably promised upon the exercis the option to perform the contract or make the conveyan upon the terms specified in his binding offer. (*Western Uni Tel. Co.* v. *Brown,* 253 U.S. 101, 110 [40 S.Ct. 460, 64 L.Ec 803] ; *Shaughnessy* v. *Eidsmo,* 222 Minn. 141 [23 N.W.2d 362, 363, 166 A.L.R. 435] ; *Richanbach* v. *Ruby,* 127 Ore. 612 [271 P. 600, 61 A.L.R. 1441] ; 12 Am.Jur. 524-525.) The optionee parts with consideration only because the optionor has in-

curred such liability. The creation of the final contract requires no promise or other action by the optionor, for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee. ''The contract has already been made, as far as the optionor is concerned, but is subject to conditions which are removed by the acceptance.'' (*Seeburg* v. *El Royale Corp.*, 54 Cal.App.2d 1, 4 [128 P.2d 362]; see *Erickson* v. *Boothe*, 79 Cal.App.2d 266, 272 [179 P.2d 611].)

Thus the option contract gives the optionee a right against the optionor for performance of the contract to which the option relates upon the exercise of the option, which the optionor cannot defeat by repudiating the option. (See McGovney, *Irrevocable Offers*, 27 Harv.L.Rev. 644, 646, 654, and cases collected in footnote 5, p. 646; Corbin, *Option Contracts*, 23 Yale L.J. 641, 656.) Since the optionor promises to perform the contract to which the option relates, subject to a condition at the discretion of the optionee, an option contract involves on the part of the optionor a unilateral promise to perform the obligations of the contract to which the option relates. (*Heller* v. *Pope*, 250 N.Y. 132 [164 N.E. 881, 882]; *Lake Shore Country Club* v. *Brand*, 339 Ill. 504 [171 N.E. 494, 501]; *Robbs* v. *Illinois Rural etc. Corp.*, 313 Ill.App. 418 [40 N.E.2d 549, 551]; *Schlein* v. *Gairoard*, 127 N.J.L. 358 [22 A.2d 539, 540]; *Shaughnessy* v. *Eidsmo*, 222 Minn. 141 [23 N.W.2d 362, 365, 166 A.L.R. 435]; *Zora Realty Co.* v. *Green*, 60 N.Y.S.2d 440, 445; see 1 Williston, Contracts (rev. ed.), pp. 175-176; Corbin, *Option Contracts*, 23 Yale L.J. 641, 650; Restatement, Contracts, § 12.) It follows that even though the option agreement differs from the contract of employment the granting of an option for a contract of employment by a prospective employee to a prospective employer involves a binding promise of the optionor to perform services upon specified terms and thus constitutes on his part a contract ''to perform or render services.''

The rule of equity that under a contract calling for exceptional services an employer can enjoin his employee from rendering such services to others, has been held applicable to options, since ''an option, when based on a sufficient consideration, is a contract by which one binds himself to . . . perform services,'' and an employee can therefore be enjoined from performing extraordinary services to others during a period for which his employment under a contract of employment has been extended by the exercise of an option of the

employer. (*Shubert Theatrical Co.* v. *Rath*, 271 F. 827, 833 [20 A.L.R. 846] ; see *Philadelphia Ball Club* v. *Lajoie*, 202 Pa. 210 [51 A. 973, 90 Am.St.Rep. 627, 58 L.R.A. 227].)

The fact that the promise of the minor to render services in an option agreement is subject to the condition precedent that the option be exercised does not make section 36 inapplicable. Nothing in that section indicates that a contract to render services must be unconditional to be approved by the court under that section. Thus a court could approve a contract of a minor actor to perform dramatic services made subject to the condition that a certain motion picture in the planning stage shall be produced; or that a certain play shall be performed; or that another actor shall not participate in a performance. There is no difference between contracts of a minor making the rendering of his services dependent upon such conditions, and an option contract making the rendering of his services dependent upon the exercise of the option by the other party.

The options granted to plaintiff by defendant were included in a contract providing for employment of the minor for a period of 52 weeks at a salary of $600 per week. Even if they were not in themselves contracts to perform or render services within the meaning of section 36, they can be approved by the court as part of a contract of employment.

Section 36 does not prescribe the terms of a contract to perform or render services in the professions specified in the section. It is obvious that a contract of a minor for employment in such professions may reasonably contain many provisions other than those specifying the services to be rendered and the compensation to be paid therefor. Thus, a minor actor may incur obligations to travel, to participate in instruction and training deemed necessary by the employer, to refrain from immoral conduct, to attend publicity meetings or social gatherings arranged by the employer, and to cooperate in other respects with the employer in his endeavors to attract the attention of the public to the employee. There was no need for the Legislature to enact provisions with regard to the content of the contracts specified in section 36, for the Legislature made each contract subject to judicial scrutiny to insure that in the light of the reasonable interests of both parties it adequately protect the interests of the minor.

The provisions in section 36 regarding the submission of contracts of minors for court approval are based on a policy different from "the policy of the law to discourage adults

from contracting with infants" (*Tracy* v. *Gaudin*, 104 Cal. App. 158, 160-161 [285 P. 720] ; *Flittner* v. *Equitable Life Assur. Soc.*, 30 Cal.App. 209 [157 P. 630] ), which underlies the right of minors to disaffirm their contracts. In professions in which one frequently begins a career at a tender age, it is to the interest of minors that they be able to make contracts with employers reasonably protecting the interests of both parties. To accomplish this purpose broad discretion has been vested in the court to which such contracts are submitted. The court may consider whether the terms of the contract are reasonable in the light of the then financial and educational interests of the minor as well as the proper development of his talents and his chances for success in the profession. This discretion, which has been vested in the court to enable the parties to adjust their contract relations to their needs, would be rendered ineffectual to serve the bests interests of the minor if it were not applicable to such option provisions as in this case.

An option to extend the term of employment is common to contracts of employment in the professions specified in section 36. Court decisions relating to contracts of adult performers or players in professional sports evidence the use of such option clauses. (*Shubert Theatrical Co.* v. *Rath,* 271 F. 827 [20 A.L.R. 486] ; *Philadelphia Ball Club* v. *Lajoie,* 202 Pa. 210 [51 A. 973, 90 Am.St.Rep. 627, 58 L.R.A. 227].) In contracts of employment with minor actors option clauses are even more important, for frequently the employer is contracting with persons of no tested ability or established reputation, who may prove to have no appeal to the public. (See *Penfield* v. *Bennett Film Lab.,* 4 Cal.App.2d 306 [40 P.2d 587].) He may reasonably object to committing himself to a long term contract of employment or to making large initial investments without securing the right to make use of the talents of the employee in the future should they meet expectations and find public recognition. The expedient of granting one or more options to the employer to extend the term of employment at an increasing rate of compensation encourages him to .develop unknown talent; without such an expedient few employers would risk the costly sponsorship of such talent.

Section 2855 of the Labor Code, which prohibits the enforcement of contracts for employment extending over a period of more than seven years, applies to the term of employment of minors under contracts specified in section 36 (*De*

*Haviland* v. *Warner Bros. Pictures, Inc.*, 67 Cal.App.2d 225 [153 P.2d 983]). There is thus a seven-year limit on the period for which an actor can be bound by a contract of employment. Given that limitation the court considers before approving a contract under section 36 whether or not the interests of the minor are best protected by a contract granting to the employer the right to exercise one or more options to extend the term of employment. If the court were precluded from approving contracts with such option clauses, even though reasonable persons would include them in their contracts, the employers deprived of the protection of such clauses would unquestionably offer contracts less favorable to the minors. Such an interpretation of section 36 would violate the familiar rule of statutory construction that statutes should be given a common sense meaning that entails no unreasonable consequences. (*Dempsey* v. *Market Street Railway Co.*, 23 Cal.2d 110, 113 [142 P.2d 929]; *Aggeler* v. *Dominguez*, 217 Cal. 429, 434 [19 P.2d 241]; *Kipp* v. *Billingham*, 217 Cal. 527, 530 [20 P.2d 318]; *Telegraph Avenue Corp.* v. *Raentsch*, 205 Cal. 93, 97 [269 P. 1109, 61 A.L.R. 366]; *Cullerton* v. *Mead*, 22 Cal. 95, 98; *Loftis* v. *Superior Court*, 25 Cal.App.2d 346, 359 [77 P.2d 491]; *California Employment Stab. Com.* v. *Municipal Court*, 62 Cal.App.2d 781, 785 [145 P.2d 361].)

We are here concerned with section 36, as it read before the 1947 amendment. In 1947, after the order approving the contract between the parties had been entered the provisions of section 36 were amended by the Legislature.* The

---

*''A contract, otherwise valid, entered into during minority, cannot be disaffirmed upon that ground either during the actual minority of the person entering into such contract, or at any time thereafter, in the following cases:

''1. . . .

''2. A contract or agreement employing such person as, or wherein such person agrees to perform or render services as, an actor, actress, or other dramatic performer, or as a participant or player in professional sports, including, but without being limited to, professional boxers, professional wrestlers and professional jockeys, where such contract or agreement has been approved by the superior court in the county in which such minor resides or is employed. Such approval may be given upon the petition of either party to the contract or agreement after such reasonable notice to the other party thereto as may be fixed by said court, with opportunity to such other party to appear and be heard; and said court shall have jurisdiction to approve, and its approval when given shall extend to the whole of said contract or agreement, and of all the terms and provisions thereof, including, but without being limited to, any optional or conditional provisions contained therein for extension, prolongation or termination of the term thereof.''

(Stats. 1947, ch. 526, § 1.)

intent of the Legislature was to leave no doubt as to the meaning of section 36, and in no wise to change it, for it declared: "The amendment made by this act does not constitute a change in, but is declaratory of, the preexisting law." (Stats. 1947, ch. 526, § 2.)

It can hardly be questioned that there are reasonable grounds for the statutory provisions withdrawing the right of disaffirmance from minors with regard to contracts to render services in the professions specified in section 36, if such contracts are found reasonable by a court in a special proceeding for the examination thereof. Whether certain other groups of minors engaged in professions similar to those specified in section 36 should be included in the section is a matter of legislative discretion. New legislation such as this ordinarily first covers the fields where it is most urgently needed, and may be extended in the light of experience. (*People* v. *Western Fruit Growers,* 22 Cal.2d 494, 506 [140 P.2d 13]; *Rainey* v. *Michel,* 6 Cal.2d 259, 270-273 [57 P.2d 932, 105 A.L.R. 148]; *Martin* v. *Superior Court,* 194 Cal. 93, 101 [227 P. 762]; *Title & Document Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 323, 325-326 [88 P. 356, 119 Am.St.Rep. 199, 8 L.R.A.N.S. 682]; *In re McKelvey,* 19 Cal.App.2d 94, 96 [64 P.2d 1002]; *Radice* v. *New York,* 264 U.S. 292, 296-298 [44 S.Ct. 325, 68 L.Ed. 690]; *Keokee Coke Co.* v. *Taylor,* 234 U.S. 224, 227 [34 S.Ct. 856, 58 L.Ed. 1288]; *Bachtel* v. *Wilson,* 204 U.S. 36, 41 [27 S.Ct. 243, 51 L.Ed. 357]; *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327].) The statute therefore does not violate constitutional rights of the defendant under the equal protection of laws clause of the United States Constitution or under the provisions of the California Constitution against special legislation.

Defendants Nero Pictures Inc. and Nebenzal, relying on *Imperial Ice. Co.* v. *Rossier,* 18 Cal.2d 33, 36 [112 P.2d 631], contend that the complaint does not set forth facts sufficient to state a cause of action against them on the ground that the complaint merely alleges that they had knowledge of the obligations of defendant toward plaintiff and not that they induced defendant to breach these obligations. It is unnecessary to determine whether the allegations in the complaint bring plaintiff within the holding of that case, since plaintiff has indicated its intent to amend its complaint as soon as opportunity arises to do so.

Defendants contend that since it does not appear on the face of the contract that the services promised by defend-

ant Brodel were extraordinary services, plaintiff is not entitled to an injunction under sections 2855 of the Labor Code and 526 of the Code of Civil Procedure. On this appeal from a judgment dismissing an action upon sustaining a general demurrer, we are not concerned with the type of relief to which plaintiff may be entitled. If plaintiff's allegations state a cause of action and are supported by proof the court may grant it any relief consistent with its cause of action (Code Civ. Proc., § 580).

The judgment is reversed.

Gibson, C. J., Edmonds, J., Schauer, J., and Spence, J., concurred.

SHENK, J.—I dissent.

There can be no quarrel with the conclusion that section 36 of the Civil Code, as amended in 1927 (Stats. 1927, p. 1917), is constitutional and withdraws the right of disaffirmance as to a judicially approved contract to perform dramatic services entered into by a minor; but I cannot agree with the conclusion that by the language of that section in 1927 the Legislature accomplished what it belatedly and twenty years later (Stats. 1947, p. 1518) said it intended by the earlier act.

Section 34 of the Civil Code permits a minor to make a contract to perform personal services (as limited by specified laws not involved), subject to his power of disaffirmance under other provisions. Section 35 confers the right of disaffirmance by the minor either before his majority or within a reasonable time afterwards, except as otherwise specified in section 36. The pertinent language of the latter section as it read at the time here involved is: "A minor can not disaffirm a contract, otherwise valid, to perform or render services as actor, actress, or other dramatic services . . . where such contract has been approved by the superior court of the county where such minor resides or is employed. Such approval may be given on the petition of either party to the contract after such reasonable notice to the other party thereto as may be fixed by said court, with opportunity to such other party to appear and be heard."

Joan Brodel, when 17 years of age, executed a contract whereby she agreed to perform dramatic services exclusively for Warner Bros. Pictures, Inc., as producer, "for and during the term of this agreement." The "term of this agreement"

was specified to commence on the 30th day of March, 1942, and to continue for a period of 52 weeks, at a salary of $600 per week. By the same instrument she granted to the producer six separate "rights or options to extend the term of employment" for additional successive periods of 52 weeks each at progressively higher weekly salaries. The contract, after notice and hearing, was approved by the court. In due time the producer elected to exercise the first, second and third options, and the artist performed thereunder. On January 26, 1946, the artist arrived at her majority. On February 13, 1946, within the time stated in the contract, the producer gave notice of its election to exercise the fourth option. On February 20, 1946, the artist gave written notice of disaffirmance and declined to render services pursuant to any purported exercise of the fourth and further options.

The foregoing comprises the substance of the allegations of the complaint. The order sustaining the demurrer and dismissing the action was based upon the trial court's determination that section 36 vested in the court the power to approve only contracts to perform or render dramatic services; that since the grant of a right or option to extend the term of the agreement was not such a contract, the right of disaffirmance as to such right or option was not taken away.

By section 36, as it read at the time here involved, the right was withdrawn as to a minor's contract to perform or render dramatic services, where "such contract" had been approved by the superior court. "Such approval" might be given upon petition, notice and hearing. The court's power was thus expressly limited to approval of a minor's contract to perform or render dramatic services. Approval of anything beyond that was outside of or in excess of the authority vested in the court. Since upon approval disaffirmance was prohibited only as to contracts to perform dramatic services, approval of anything further would accomplish nothing. It would be purely gratuitous, and could not deprive the minor of the right of disaffirmance otherwise conferred by law. Language extending the expressed deprivation should not be judicially supplied.

The specification of a contract to perform dramatic services refers to an accepted offer, a present binding obligation to perform those services. A valid option is not an accepted

offer, but merely binds the optioner to keep open an offer. It is the sale of a present right to create a future obligation to perform. (*Hicks* v. *Christeson*, 174 Cal. 712, 716, 718 [164 P. 395]; *Seeburg* v. *El Royale Corp.*, 54 Cal.App.2d 1, 4 [128 P.2d 362]; *Brickell* v. *Atlas Assurance Co., Ltd*, 10 Cal.App. 17, 22 [101 P. 16], citing Am. & Eng. Ency. of Law; *Cline* v. *Hall*, 107 Okla. 218 [232 P. 31, 33]; Restatement of the Law of Contracts, § 47.) There is no obligation to perform until the option is exercised, and conceivably the offer may never ripen into an obligation to perform.

The plaintiff objected to this construction and application of the language employed by the Legislature, but did not question the fact that the words of the contract appeared to limit the employment and the promise to perform dramatic services to a term of one year from March 30, 1942. It argued that the purpose of the enactment would be obviated unless the several options to extend the term for the successive periods be included within the present obligation to perform dramatic services. To the possible answer that it could have written a contract for a straight seven-year term the plaintiff replied that the executed contract had been the standard in form for many years.

The plaintiff invoked the rule of contemporaneous construction. The construction asserted was not express but tacit; that is, it was inferred from a consistent failure by minor artists for about 20 years or since 1927 to attempt disaffirmance of judicially approved contracts, or to request limited approval by the court, on the ground that disaffirmance was not withdrawn as to the option features included within a contract to perform dramatic services. This failure, however, may also be noted as evidence of satisfaction by the minors with their contracts. But assuming that such failure could create a contemporaneous construction, the rule is nevertheless inapplicable when the statute calls for a different construction. (*Johnston* v. *Board of Supervisors, ante*, pp. 66, 74 [187 P.2d 686], citing *California Drive-In Restaurant Ass'n* v. *Clark*, 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028].)

The plaintiff also relied on the act of 1947 (*supra*, Stats. 1947, p. 1518) which amended the language of section 36 regarding the contract as to which the minor's right of disaffirmance was withdrawn upon approval by the court. That section now contains the following relating to the contract

and the authority of the court: "A contract or agreement employing such person as, or wherein such person agrees to perform or render services as, an actor, actress, or other dramatic performer, . . . where such contract or agreement has been approved by the superior court . . . and said court shall have jurisdiction to approve, and its approval when given shall extend to the whole of said contract or agreement, and all of the terms and provisions thereof, including, but without being limited to, any option or conditional provisions contained therein for extension, prolongation or termination of the term thereof." Section 2 of the 1947 act states that the amendment does not constitute a change in, but is declaratory of, the preexisting law.

Without such a legislative declaration a later amendment may be taken as stating the intended meaning of a statute before amendment. (*De Haviland* v. *Warner Bros. Pictures,* 67 Cal.App.2d 225, 232-233 [153 P.2d 983].) The addition of the legislative declaration is not a matter of judicial inquiry unless it has some weight in determining prior legislative meaning. It can have no weight where the declaration is diametrically opposed to the fact. (*California Emp. etc. Com.* v. *Payne, ante,* pp. 210, 213-214 [187 P.2d 702].) Without that declaration the conclusion is irresistible that the change in wording of section 36 was intended as a change in meaning. In truth the later inclusion of matters not theretofore mentioned would be taken as a legislative admission that at the time of the prior statute they were either overlooked or were not intended to be included. Inasmuch as the 1927 and 1947 amendments to section 36 provide the express exceptions to the exercise of the power of disaffirmance conferred by section 35, the courts should confine the exceptions within the bounds of the plain language employed by the Legislature. It does not appear whether the claimed standard form of contract for employment of actors in motion picture production was in use in 1927. If so, the Legislature by the amendment to section 36 in that year did not indicate awareness thereof so as clearly to authorize approval of the entire contract. From the clear language of the 1947 amendment expressing such intent, it becomes obvious that the Legislature was made aware of the facts at least since the commencement of the present action. I see no justification for employing the expedient of interpretation in accord with the 1947 legislative declaration to countenance a statutory deprivation of

the defendant's right of disaffirmance of which she was not thus clearly deprived under the applicable preexisting law. In such case the later amendment becomes a rule for the future only. (*Matter of Coburn*, 165 Cal. 202, 209-210 [131 P. 352] ; *Clayton* v. *Schultz*, 4 Cal.2d 425, 430 [50 P.2d 446].)

In my opinion the trial court correctly ruled that the facts stated in the complaint did not constitute a cause of action, and I would affirm the judgment.

Carter, J., concurred.

Respondent's petition for a rehearing was denied May 27, 1948. Shenk, J., and Carter, J., voted for a rehearing.